# GORE et ux. v. McDAID et al.—178 S. W. (2d) 221.

Eastern Section. November 2, 1943.

Petition for Certiorari denied by Supreme Court, Jan. 8, 1944.

112

John W. Cameron, of Tullahoma, and Strang, Fletcher & Carriger, of Chattanooga, for complainants-appellees.

Jas. J. Finley, of Manchester, and J. Hamilton Cunningham and Wilkerson & Wilkerson, all of Chattanooga, for defendants-appellants.

HALE, J. The question before us is the validity of a judgment obtained by complainants against John McDaid in Chancery at Winchester on April 4th, 1938. The instant suit was filed on October 15th, 1938, to enforce this judgment and to set aside fraudulent conveyances made April 20th, 1938, registered the following day by McDaid, to his daughter, the co-defendant Miss Janie McDaid.

Chancellor Foust upheld the judgment and set the conveyances aside. Mr. McDaid and his daughter appeal and assign error only to that portion of the decree as sustains the Winchester judgment, urging that he was

proceeded against as nonresident defendant and no personal judgment could be rendered against him therein, and, further, that the decree was in excess of the amount sued for and was void to the extent of the excess. Appellees insist that McDaid entered his appearance to such proceeding and that the decree was authorized by the scope and frame of the bill under the prayer for general relief.

A development of the case in order of time will aid in understanding the issues.

On February 29th, 1928, the complainants acquired from H. M. Templeton 115 acres of land in Franklin County, which was deemed to have upon it valuable sand and gravel rights, in addition to its value as a farm. The consideration was $5,000, evidenced by 10 notes of $500 each, due in one to ten years, inclusive, and secured by lien.

On February 23rd, 1931, they conveyed this land to McDaid, who assumed the payment of the lien indebtedness and agreed that if he sold the property within a year he would pay Gore and wife one-half of the sales price in excess of $5,000, and it was further agreed that if only the sand and gravel rights were sold that $1,500 of complainants' part of the anticipated profits might be satisfied by the conveyance to them of 40 acres of said tract, and that if no sale was made in a year then McDaid was to re-convey to them the aforesaid 40 acres, the boundaries of which had been agreed upon.

On December 31st, 1934, the complainants filed their bill in Chancery at Winchester against McDaid, H. M. Templeton and Union Central Life Insurance Company. This action was based upon the agreement before set forth and charged complainants were entitled to this 40

acre tract. Mr. Templeton and the Insurance Company were made parties because of liens they held on the property. McDaid was alleged to have been a resident of Hamilton County. The main object of the bill was to marshal the liens so as to give the complainants aforementioned 40 acres clear and unencumbered. One of the special prayers was that McDaid be directed to execute a deed to complainants for the 40 acres "and in the alternative if this cannot be done then let complainants have a decree for $1,500.00 against respondent and let a lien be declared on the property to pay said decree." There was also a prayer for general relief. The suit was subsequently abandoned as to Mr. Templeton and the Insurance Company. On June 24th, 1935, complainants were allowed to and did file an amended bill, averring McDaid to be a non-resident and to be the owner of certain real estate in Chattanooga, and in which it is said "complainants having alleged that the said John McDaid is indebted to them in the sum of $1500.00," etc.

On February 7th, 1936, judgment pro confesso was entered against McDaid, reciting he had been regularly brought before the court by publication, etc. It does not show the issuance and levy of an attachment.

On June 14th, 1937, the complainants filed the deposition of themselves and their witnesses, showing the 40 acre tract to be worth $2,500 and on the same date obtained a decree from Chancellor Stewart awarding a recovery of $2,500 under the contract before referred to. However, it was adjudged no personal recovery was awarded; the decree ordering the Chattanooga realty, attached under the amended bill, be sold to satisfy the recovery.

On August 25th, 1937, McDaid filed a petition, reciting the obtention of the recovery against him; that he was a non-resident and had no knowledge of the proceedings on judgment until after the close of the term at which it was rendered; that the decree was wholly unjust "the allegations . . . that this petitioner owed the complainants $2500.00 or any amount was and is absolutely and utterly false and untrue," and that his property had been advertised for sale under the attachment on August 26th, 1937, and that unless the sale was restrained petitioner would suffer an irreparable injury, and he prayed "that this petition be taken, deemed and considered as an answer to said original bill filed herein, to have all the force and effect of an answer, and that at the hearing said decree and also the pro confesso . . . be set aside and for nothing held," that a restraining order or injunction be issued to restrain the sale advertised under the decree complained of "and that petitioner have the opportunity to make defense to said attachment bill as guaranteed by the laws of the land giving all persons a day in court to preserve and protect his right." This was sworn to by the petitioner's "Agent and Attorney" Mr. Finley. This petition was presented to Chancellor Stewart, who restrained the sale and directed the Clerk and Master to file the petition and give notice to the complainants.

The case stood in this plight until December 13th, 1937, when McDaid filed a plea in abatement, averring the Chancery Court at Winchester had no jurisdiction because he was being proceeded against as a non-resident and the only property attached was in Hamilton County, and further, for the reason that when the attachment was issued the owners of the legal title to the property at-

tached were not before the court. This plea was sworn to by Mr. Finley.

Subsequently, Mr. McDaid filed an answer or pleading supplementary to the petition of August 25th, 1937. In it he reiterated a denial of being indebted to the complainants, saying ''and he denies that he owes them or either of them said amount of $2500.00, or any part thereof,'' etc. It is then averred that as the legal title to his property was not before the court the complainants took nothing by the attachment. It concludes ''and having fully answered said attachment bill, denying all the allegations therein made, that have not been expressly denied, he now prays that said judgment by default for $2500.00 and cost of suit rendered on June 14th, 1937, be set aside, and complainants' bill be in all things dismissed.'' This was sworn to by him on October 22nd, 1937, and apparently was filed shortly thereafter.

On December 13th, 1937, complainants moved to strike the plea in abatement because coming too late and also to strike the petition of August 25th, 1937, because the defense came too late, and further, because the defendant had not filed any bond ''required in cases of injunctive and restraining orders.''

On December 15th, 1937, the Chancellor allowed ''the answer and plea in abatement heretofore filed to be entered on condition that defendant John McDaid execute and post a bond in the sum of $200.00 and that he be allowed 20 days in which to file a cost bond on his said petition and answer.''

On February 19th, 1938, the matter was again before the Chancellor on the motion to dismiss, and at the instance of McDaid's solicitor he was given 10 days additional in which to file bond in default of which

"respondents answer and pleas will stand automatically stricken, and complainants will proceed in the cause as against John McDaid as a non-resident."

On April 4th, 1938, a decree was entered reciting these matters and that McDaid had failed to comply with the decree, but had apparently abandoned his defense, and awarding judgment to the complainants for $2,500, with interest from June 14th, 1937. The record shows that Mr. McDaid excepted to this decree and prayed and was granted an appeal to the Court of Appeals, conditioned upon his filing proper appeal bond within 30 days. Such bond was never filed.

Code, Sec. 9481, regulates the setting aside of judgments pro confesso. It is as follows:

"In all cases of attachment sued out because the defendant resides out of the state, or has merely removed himself or property from the state, the judgment or decree by default may be set aside, upon application of the defendant and good cause shown, within twelve months thereafter, and defense permitted upon such terms as the court or justice may impose."

The defendant was proceeding under this statute. His petition attempted to show good cause, i. e., a meritorious defense to complainants' action. He prays that the petition be treated as an answer to the allegations of the bill. Later, he filed an answer, sworn to by him, in which he reiterates the allegations contained in the petition. Although he subsequently undertook to file a plea in abatement to the jurisdiction we believe the filing of the petition and answer was a general, not special, appearance. Gibsons Suits in Chancery, Secs. 223, 224.

Under our statute, defense may be made (1) by plea in abatement; (2) by motion to dismiss; (3) by demurrer;

(4) by plea in bar; (5) by answer; (6) by cross-bill. Code, Sec. 10465. However, under the Act of 1897, Chap. 121, Code, Sec. 8756, a plea in abatement may be filed at the same time as the plea in bar, but Code, Sec. 10466, provides "after answer filed, and no plea in abatement to the local jurisdiction of the court, no exception for want of jurisdiction shall afterwards be allowed." This is the case presented to us. The answer was filed prior to the plea. No permission was sought or granted for the withdrawal of the answer and the filing of the plea.

In Corpus Juris Secundum, it is said:

"A general appearance by some act which goes to the merits and does not raise the question of venue when it could have been raised waives the right to subsequently raise the objection that the venue was wrong; but a purely formal appearance which is merely the equivalent of service of process, and no more, does not waive such objection, and an exception is sometimes recognized with respect to local actions."

6 C. J. S., Appearances, Sec. 18, subsec., page 57.

It would be difficult to imagine any litigant receiving any more favorable or greater consideration than that accorded McDaid by Chancellor Stewart. Without an injunction bond he restrained a sale of the property attached. This was in effect from the filing of McDaid's petition on August 25th, 1937, until final decree on April 4th, 1938. He was given the right to file answer and plea upon executing bond for cost. This was a part of the terms contemplated by the statute, Code, Sec. 9481, supra. This permission was extended and renewed from December 15th, 1937, until April 4th, 1938, and then he was granted the right of appeal, which he did not exercise. In view of the authorities and in the light of this

record, we think he was properly before the court by general appearance.

 It is argued, however, that in the order of February 19th, 1938, it was provided that if no bond was given the answer and plea would stand automatically stricken "and complainant will proceed in the case as against John McDaid as a non-resident," and consequently no personal judgment could be entered. This argument may be divided into two parts: (a) that as the defendant's pleadings were automatically stricken he was not before the court, and (b) that thereafter no personal judgment could be entered. Neither of these contentions are sound. (a) His failure to comply with the order of the court and the consequent striking of his pleadings would not operate as a withdrawal of his appearance. 3 Am. Jur., "Appearances," Sec. 43, page 811. 6 C. J. S., Appearances, Sec. 28, page 70. (b) That part of the order reciting the proceedings against him as a "non-resident" while of unfortunate verbiage, is not an adjudication that no personal judgment could be entered against him. When the original decree was entered under the order of publication it was specifically stated that a personal judgment was not awarded. It is probable the same language would have been used in the decree in question had it been intended to so limit the judgment and we think "non-resident" as used therein was meaningless unless to convey the idea that the defendant was being proceeded against as one under a judgment pro confesso.

 It is next said the decree is in excess of the amount sued for and is to that extent void. We cannot agree to this. As pointed out, the contract provided that if the sand and gravel rights in the 40 acre tract were

sold in one year the complainants would accept $1,500 as their part of the profits, but if not so sold the 40 acre tract was to be re-conveyed to them. The sand and gravel rights were not sold nor was the 40 acre tract re-conveyed them. The evidence shows this tract to be worth $2,500. While under the prayer of the bill quoted, it was probably in the mind of the pleader that $1,500 would be the amount of the recovery, this was only a conclusion and an erroneous one at that. Regardless, however, of how this may be, when McDaid answered it was averred that he did not owe the complainant ''$2,500.00 or any amount.''

Under the peculiar facts of this case we hold (a) the recovery was authorized under the allegations of the bill and prayer for general relief (Myers v. Wolf, 162 Tenn. 42, 34 S. W. (2d) 201), and (b) that the defendant had knowledge that complainant was suing for $2,500 and any supposed deficiency in the bill was corrected by the allegations of the answer, which created the issues between the parties. Sullivan v. Farnsworth, 132 Tenn. 691, 179 S. W. 317; Nashville, C. & St. L. R. Co. v. Anderson, 134 Tenn. 666, 185 S. W. 677, L. R. A. 1918C, 1115, Ann. Cas. 1917D, 902, 41 Am. Jur. ''Pleadings,'' 402, page 570, et seq.

Decree affirmed, with interest and costs against appellants and surety on their appeal bond.

McAmis and Burnett, JJ., concur.