HALL *v.* JORDAN.

(*Knoxville,* September Term, 1949.)

Opinion filed February 10, 1950.

(1)

2

SEILER & HUNTER, of Elizabethton, GUINN & MITCHELL, of Johnson City, for complainant (appellee).

BANKS, STREET & BANKS, and O. M. FAIR, JR., all of Elizabethton, for defendant (appellant).

MR. JUSTICE GAILOR delivered the opinion of the Court.

This record presents an original attachment from the Chancery Court of Carter County. Alleging that she, as a resident of Idaho, was a non-resident judgment creditor under an Idaho decree for divorce and child support and that the award for child support was unpaid, complainant by the bill undertook to subject the undivided

interest of defendant in certain realty in Carter County, to the satisfaction of that part of the Idaho decree which awarded her a money judgment for child support. The defendant is a resident of the State of Washington, and was at the time of the rendition of the Idaho decree, a resident of Oregon. However, that decree recited that jurisdiction of the Idaho Court had been secured by personal service on the defendant.

Service of the present attachment bill was had by publication, and after legal publication had been made and the time for filing pleas had expired, a *pro confesso* was taken against the defendant. Thereafter the defendant appeared by counsel, and moved to set aside the *pro confesso*. By grace of the Chancellor, the motion was granted and the defendant allowed 15 days, not to plead, but only to *answer* the bill. The defendant then filed a general answer by which issues were raised on the merits.

After the answer, and after there had been some amended pleading by both parties which we consider immaterial, the complainant proceeded to take her proof by depositions. The defendant also took his proof by depositions, and we consider it significant that this proof was in no sense limited to the question of jurisdiction, but went broadly to the merits of the bill. There was no attempt, apparently by either party, to conform to Chancery rules as to limits of time for pleading, with the result that the litigation was protracted and delayed. Both parties were responsible.

After the complainant had taken her proof and the defendant had taken his, but before the complainant had finished her proof in rebuttal, it was developed that the statement in the Idaho decree, that there had been personal service of process on the defendant in the divorce case,

was incorrect and jurisdiction of defendant had in fact been obtained by "substituted service",—an equivalent of our service by publication.

When complainant's Tennessee lawyers discovered how service in the Idaho suit had been obtained, they were doubtful whether that part of the decree which awarded to the complainant $30 per month for the support of three minor children would, as a foreign judgment, support the attachment. *Darby* v. *Darby,* 152 Tenn. 287, 277 S. W. 894, 42 A.L.R. 1379; *Thones* v. *Thones,* 185 Tenn. 124, 203 S. W. 2d 597. Stating this, the complainant moved to amend her bill, and to sue in the alternative for contribution from the defendant as in "quasi contract," for money which complainant had expended for the support, education and maintenance of the three children.

The filing of this amended bill was resisted vigorously by the defendant by motion and by demurrer. The defendant made no attempt to dispose of the motion before the consideration of the demurrer. With the record in that plight, the Chancellor delivered a careful, well-studied opinion in which he reviewed our attachment laws so far as they affect and validate the suit of one non-resident against another non-resident, and he concluded that since complainant and defendant, though non-residents, were not residents of the same state, the one being a resident of Idaho and the other of Washington or Oregon, that the complainant could under Code Sections 9396 and 9405, maintain her bill in Tennessee. The Chancellor further held (1) that the original bill seeking enforcement of the Idaho decree for a money judgment, could not be maintained, *Darby* v. *Darby, supra;* (2) that the amended bill stated a cause of action which was ger-

mane and pertinent to the matters stated in the original bill, and could be so filed in the alternative as an amendment to the original bill; (3) that complainant could proceed by attachment against defendant for the relief sought although she was not a judgment creditor and, therefore, that the motion and demurrer to the amendment should be overruled, and the defendant allowed time in which to answer and take any further proof that might be necessary. And further, that in the event defendant elected not to answer or to take further proof, that the Chancellor would entertain a motion for final decree.

The defendant failed or refused to answer or take further proof, and on motion, a final decree was entered for complainant against defendant (1) as in quasi contract by way of contribution, for $3,360,—being arrears for child support at the rate of $20 per month, not $30 per month as fixed by the Idaho decree; (2) for the sale of defendant's undivided interest in the attached realty to satisfy the decree.

The defendant took a broad appeal to the Court of Appeals, and that Court affirmed the Chancellor on all points.

■■ Defendant has now filed petition for *certiorari* in which the errors assigned in the Court of Appeals are reiterated here. The assignments of error are indeed no more than assignments of error to the decree of the Chancellor. We would be justified in refusing to consider the petition for *certiorari* on that account, *Mayor and City Council of Nashville* v. *Patton*, 125 Tenn. 361, 143 S. W. 1131; *Willoughby* v. *Jarvis*, 136 Tenn. 279, 281, 189 S. W. 366, and we would be justified in dismissing the petition for *certiorari* on account of the

condition of the transcript which in many particulars, fails to comply with our Rule 4, 185 Tenn. 861, in that the technical record is mixed with the bill of exceptions, and there is no "minute and perfect index of the contents of the transcript."

Consideration of the petition for *certiorari* is made difficult by these breaches of our Rules and by the laxity and irregularity of the defendant's pleading and presentation of his case in the Chancery Court. The Chancellor, himself, recognized this when he said: "At this point it can be remarked that the character of the pleadings, and their utter confusion, have needlessly complicated this cause, and should not have been tolerated by the Court. Obviously a number of pleas and motions of the defendant came too late and have been waived by proceeding to proof."

The only questions presented by the *certiorari* which are necessary to consider are those of jurisdiction and the legality, not the amount, of the money judgment.

It is only necessary to determine that the Court had jurisdiction of the person of the defendant as the Courts of Carter County had exclusive jurisdiction of the *res*,—the land which was the object of the suit. Whatever might have been defendant's objection to the original attachment and publication as securing valid service on him, that objection was waived or cured when he came into Court, secured the setting aside of the *pro confesso,* and by grace of the Chancellor, was permitted to and did file an answer in which he entered a general appearance to make defense to the original bill on its merits. Gibson, Section 225; *Gore* v. *McDaid,* 27 Tenn. App. 111, 178 S. W. 2d 221; *Schalze* v. *Anderson,* 12 Tenn. App. 637. Had he moved to set aside *pro con-*

8

*fesso* only for the purpose of pleading in abatement, *Lumber Co. v. Lieberman,* 106 Tenn. 153, 61 S. W. 70, he would not then have entered a general appearance.

■ When, in the decree authorizing the filing of the amendment of February 11, 1948 by which complainant set up alternate grounds for relief, the Chancellor directed that a copy of the amendment be served on the defendant's solicitor of record, and that was done, the defendant was properly in Court on all matters arising after the amendment. When the amendment was approved, it became a component part of the original bill, Gibson Section 677.

Having determined that the jurisdiction on the person of the defendant was properly secured, it is necessary to consider the validity of the attachment. *Stewart v. Smith,* 3 Shannon's Cases, 686. The apparent theory of the original bill was that complainant was attaching under Code Section 10367. Since complainant is a resident of Idaho, and defendant is a resident of Washington, the defendant contends that complainant had no right to the attachment, supporting this argument by the following statement from Gibson: "A non-resident creditor without a judgment cannot maintain a bill against a non-resident debtor either under Code Sec. 10367, or *under the general principles of Equity* jurisdiction." (Emphasis supplied.) Section 1025, pp. 840-841.

In view of the reverence of our Bench and Bar for the author and text of Gibson's Suits in Chancery, we share the reluctant diffidence of the Chancellor in declaring that that statement is not presently the law in Tennessee.

Neither *Gasget v. Scott, Truet, et al.,* 1836, 17 Tenn. 244, nor *White v. Monahan,* 3 Tenn. Civ. App. 195, which

are the only cases cited to support the statement, do in fact support it. The early case of *Gasget* v. *Scott* had to do with the construction of an amendment to the law repealing imprisonment for debt where in lieu of that remedy, the creditor was given extraordinary relief in the Chancery Court, and the later case of *White* v. *Monahan* by the Court of Civil Appeals, is clear authority against the proposition.

The statement is irreconcilable with the rule laid down in Gibson, Section 177 (9) which is supported by decisions of this Court in the following cases: *Taylor* v. *Badoux*, 92 Tenn. 249, 21 S. W. 522; *Bank* v. *Motherwell Iron & Steel Co.*, 95 Tenn. 172, 31 S. W. 1002.

However, since we are here upholding the attachment not under Code Section 10367, but under Code Sections 9396 and 9405, it is with regard to the accuracy of the statement of the rights of a non-resident creditor without a judgment "under the general principles of Equity jurisdiction," that is our concern here. So far as it affects the rights of the present litigants, the statement in Gibson is an inaccurate definition of equity venue.

"Although an action solely for a divorce is required to be brought in the county where the plaintiff resides, a suit in equity to subject real estate of a nonresident husband to the support and maintenance of a deserted wife may be brought in the county in which such real estate is situate." 17 Am. Jur., Section 267, p. 289; *Rhoades* v. *Rhoades*, 78 Neb. 495, 11 N. W. 122, 126 Am. St. Rep. 611.

In Sections 9396 and 9405, use of the words, "any person" without limitation, necessitates the construction that there was no restriction by the Legislature against the use by non-resident complainants, of the attachments

authorized there. Compare: *Anderson* v. *Stribling,* 160 Tenn. 453, 26 S. W. 2d 131, where, in construing Williams' Code Section 9399, Acts of 1870-71, it is held that the restriction obtains only where both the complainant and the defendant are non-residents, but residents of the same foreign jurisdiction, and that restriction is valid only where there is no allegation of fraud. *Bank* v. *Motherwell Iron & Steel Co., supra.*

■ Finally, we will discuss the amount and basis of the award only so far as it is necessary to determine that there was material evidence to support the concurrent finding below. The amended bill prayed a decree for reasonable reimbursement for the support and maintenance of the three minor sons from March 2, 1929, the date defendant deserted them, to 1938, 1942 and 1943, the years when the children either attained their majority or became self-supporting. It was undisputed by defendant that after he deserted his wife and children he contributed nothing to their support or maintenance. For that period the Chancellor considered an award at the rate of $20 per month, or a total of $3,360 to be a reasonable and just award. As stated, the award was concurred in by the Court of Appeals. We think that award was amply supported by evidence of the complainant and her witnesses that she had, in order to support her children, worked as a laundress in a public laundry and as a farm hand, and by the evidence of the defendant, himself, that as an able-bodied man, a logger and timber-worker, he was at all times able to contribute to the support of his children, but had failed to do so.

■ After complainant's evidence, it was clearly for the defendant to show that the award of $20 a month was unreasonable. He introduced no such evidence. No

point is made that the law of Idaho is any different from that of Tennessee with regard to the obligation of parents to support their minor children. In Tennessee the rule is clearly established that the obligation is joint and several on the mother and father to support their minor children "with due regard to the condition and means of each", *Brooks* v. *Brooks,* 166 Tenn. 255, 257, 61 S. W. 2d 654 and that the mother is entitled to contribution from the father when she has borne the entire expense and when his means justify. *Rose Funeral Home* v. *Julian,* 176 Tenn. 534, 144 S. W. 2d 755, 131 A.L.R. 858; *Atchley* v. *Atchley,* 29 Tenn. App. 124, 194 S. W. 2d 252.

It results that the *supersedeas* will be dismissed and the writ of *certiorari* denied.

All concur.