IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 2, 2001 Session

# STATE OF TENNESSEE *ex rel.* DELORIS ARMSTRONG, ET AL. v. JAMES COLEMAN, ET AL.

**A Direct Appeal from the Juvenile Court for Gibson County**
**Nos. 4786 and 3756     The Honorable Robert W. Newell, Judge**

---

**No. W2000-01122-COA-R3-CV - Filed May 24, 2001**

---

In two cases consolidated for appeal, the petitioners, mothers that are provided child support enforcement and paternity establishment services by the State of Tennessee pursuant to federal and state law, appeal the orders of the trial court setting periodic child support and establishing child support arrearages. The trial court failed to follow the child support guidelines, stating that the guidelines are an unconstitutional violation of the equal protection clause of both the state and federal constitutions insofar as the guidelines do not allow credit to a payor-parent for obligations imposed by child support orders concerning children born to the payor-parent subsequent to the subject child. We reverse and remand.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Juvenile Court Vacated**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and ALAN E. GLENN, J., joined.

Paul G. Summers, Attorney General and Reporter; Stuart F. Wilson-Patton, Assistant Attorney General, For Appellants, State of Tennessee, ex rel., Deloris Armstrong and Tequilla Coleman

James Coleman and Kenneth Williams, Pro Se

**OPINION**

The State of Tennessee, ex rel. Delores Armstrong and Tequilla Coleman, appeals the orders of the juvenile court setting periodic child support and establishing child support arrearages of the defendants, James Coleman and Kenneth Williams, respectively. We will relate the pertinent facts of each case separately.

ARMSTRONG v. COLEMAN

Damaris J. Mullins was born December 11, 1981, to appellant, Delores Armstrong. On January 14, 1982, the Juvenile Court of Gibson County entered an order establishing Mr. Coleman to be Damaris's father, legitimating Damaris, and ordering Coleman to pay child support in the amount of $15.00 per week. The child support payments were modified to $35.00 per week, effective July 27, 1987. The record reflects several contempt actions against Coleman for failure to pay child support and numerous income assignment orders because of frequent change of employers.

On February 8, 2000, the juvenile court again found Coleman in contempt for failure to pay child support, and established child support arrearages of $6,317.58. The court set a compliance review hearing for March 21, 2000. On March 21, 2000, an oral motion was made to increase the child support in accordance with the guidelines. Mr. Coleman testified that he earned $8.57 per hour and that he worked 40 hours per week. He stated that he now has two additional children, ages nine and ten years old, and he is under court orders to pay $15.00 per month current support for each child and $15.00 per month to apply to arrearages for each child, for a total of $60.00 per month. He did not testify that payments were being made as ordered nor that he was living with the children.

At the conclusion of the testimony, the juvenile court stated from the bench that Mr. Coleman would be given credit of $60.00 per month against the child support obligation to Damaris, although the orders Mr. Coleman testified to were entered subsequent to the 1982 support order for Damaris. On April 6, 2000, the court entered an order to increase Mr. Coleman's support to $54.00 per week, plus a statutory fee of $2.70, for a total of $56.70. There was no statement concerning a deviation from the guidelines nor any factual findings set out to support a deviation. The juvenile court heard the state's motion to alter or amend on April 18, 2000, and at that time the juvenile court judge filed a "Finding of Fact" which he later incorporated into an order entered on May 5, 2000, denying the motion. The "Finding of Fact" states as follows:

> Upon a recent case, <u>State of Tennesee, ex. rel., Donna Randolph vs. John R. Poteet</u>, Putnam Juvenile No. 83, Appeal No. 01A01-9808-JV-00419, March 19, 1999, it is my opinion a Constitution [sic] Law issue exist in the application of this Statute. One of the primary purposes of the Juvenile Court is to "look after the best interest of the children in my jurisdiction." It is my opinion that the "first families first" or "race to the court house" statutes quoted in this motion are "unconstitutional" under the State and Federal Constitutions.
>
> It has been established by case law that a Juvenile Court may consider facts, and look at the parent's obligations such as a former "Court Decree" as a rebuttable presumption in assessing the amount of appropriate child support.
>
> It is the opinion of this court that children have a right to a standard of living, care, and maintenance commensurate with the

collective incomes and best efforts of their parents. <u>Hall v. Jordan</u>, 190 Tenn. 1, 11, 227 S.W.2d 35, 39 (1950); <u>Evans v. Evans</u>, 125 Tenn. 112, 119, 140 S.W.2d 745, 747 (1911).

Children have the right to expect that their parents will adequately feed, clothe, house, and educate them and it should not depend on the date of their birthday or the family into which they are born. <u>Martinez v. Martinez</u>, 660 A.2d 13, 17 (N. J. Supreme Ct. Ch. Div. (1995)).

It is the opinion of this court that the classification between children based on a "filing date" is "unconstitutional." It discriminates against other children having court orders or decrees. It is the opinion of this court that not to consider the child support orders of other courts denies those children "equal" protection of the law and their fundamental rights. These statutes classify children by accident of their birth or the time of the child support filing and this type of classification has no "rational relationship or basis to any legitimate government interest."

Since it is the primary responsibility of the Juvenile Court to consider the "best interest of children living within its jurisdiction," it is the opinion of this court that the "first families first" statute is "unreasonable in the Juvenile Courts of Tennessee. The "first families first" statute used to exempt other Court decrees ordering child support from being considered by the Juvenile Court is a violation of the other children's fundamental rights and equal protection under the State of Tennessee Constitution and United States Constitution since not "Rational legitimate State" interest exist.

All children of the same parent should have the right to share fairly with other siblings in their parent's resources. The department of children services should not be able to place administrative "convenience" ahead of fundamental fairness. The State should not be allowed to simply shrug its bureaucratic shoulder and announce that other children support orders and Court decrees cannot be considered since to deny them is a violation of fundamental fairness and should be left to the decision of the Court.

It's shocking to read the Tennessee Child Support Guidelines containing the standards by which the guidelines should be measured giving the following purpose: "to make child support awards more

-3-

equitable by ensuring more consistent treatment of persons in similar circumstances." Tenn. Comp. R. & Regs. R. 1240-2-4-02(2)(b).

Is this being done in this matter? It is apparent that the Constitution demands that the circumstances of children with a common biological parent be similar. This Court has put the guidelines "first families first" bias to the test and after careful consideration finds that it does not pass muster under the State and Federal Constitutions. It is the opinion of this court that a valid child support order or decree from a valid court should be considered in calculation of the child support in [sic] when available to this Court. Therefore upon considering the facts in this matter and the best interest of the children the motion to alter or amend the judgment of this Court is denied on this 18th day of April, 2000.

## COLEMAN v. WILLIAMS

Kierra S. Coleman was born to appellant, Tequilla Coleman, on March 10, 1989, and on November 17, 1990, a order of paternity was entered finding Mr. Williams to be Kierra's father. Subsequently, on February 7, 1991, the juvenile court entered an order setting current child support at $10.00 per week. On March 26, 1998, the court entered an order increasing the child support payments to $24.00 per week, and establishing an arrearage of $1,305.19 as of March 17, 1998.

In the summer of 1999, the state sought to hold Mr. Williams in contempt for failure to pay child support and also sought an increase in the amount of child support. On December 9, 1999, the juvenile court entered an order finding an arrearage of child support in the amount of $3,140.33 as of November 23, 1999, but continued the current support of $24.00 per week and continued the matter. The modification issue was again continued by order entered February 4, 2000, and at that time, Mr. Williams was found in contempt for failure to pay child support with an arrearage of $3,212.33.

A hearing was held on March 28, 2000. Mr. Williams testified that he was employed by City Concrete earning $9.00 per hour and he worked 40 hours week. Mr. Williams also testified that he had a court order to support five additional children, paying $56.00 per week in current support and $5.00 per week on the arrearages, but admitted that the child support order for Kierra was entered prior to the order for the other five children. At the conclusion of the hearing, the court ruled from the bench that it would grant a modification but that Mr. Williams would be given credit for the amount paid under the subsequent child support order. The court modified the current support order for Kierra to $52.00 per week, plus the statutory fee. An order was entered April 6, 2000 setting the child support arrearages at $2,736.33, with an arrearage payment of $5.00 per week. The order also increased the current support for Kierra to $52.00 per week, which was not in accordance with the

guidelines, but there was no finding concerning a deviation from the guidelines, nor was there any statements as to what the established amount under the guidelines for support would be.

The state's motion to alter or amend was heard on April 18, 2000, and the state was furnished the "Finding of Fact," heretofore referred to in the Armstrong v. Coleman cases. The "Finding of Fact" was incorporated into the order entered May 5, 2000, denying the motion. The order set retroactive child support from March 10, 1989 until February 8, 1991 in the amount of $1,000.00 but made no reference to the proper amount under the guidelines of retroactive child support nor of any deviation therefrom.

The state has appealed the trial court orders in both cases setting the child support obligations and arrearages and the order of the trial court denying the motion to alter or amend which apparently holds the guidelines unconstitutional. The three issues presented for review as stated in the appellant's brief are:

> I. Whether the constitutionality of the Tennessee child support guidelines is properly before the court.
>
> II. Whether the Tennessee child support guidelines violate the constitutional requirements of equal protection.
>
> III. Whether the juvenile court erred in its treatment of back support and arrearages.

Under the first issue for review, the state asserts that the constitutionality of the child support guidelines was not properly before the trial court. Appellant avers that the issue was not raised by any party but was raised by the trial judge for the first time in his ruling on a motion to alter or amend the order appealed. The state also argues that "under Tenn.Code Ann. § 29-14-107 and Tenn.R.Civ.P. 24.04, the Attorney General must receive notice of all constitutional challenges to statutory and regulatory provisions and be provided an opportunity to be heard." While we agree that the above statute and rule require notice to the Attorney General, we do not agree that this notice must be given in all cases. The statute pertains to declaratory judgment actions which we do not have in this case. The rule provides that the Attorney General is to be notified when the validity of a statute is "drawn into question in any action to which the state or an officer or agency is *not* a party." Tenn.R.Civ.P. 24.04 (emphasis added). In the case before us, the state was a party acting for the petitioners. Thus, in the instant case, we do not feel that notice to the Attorney General is indispensable for the court to question the constitutionality of the statute.

The object of the above statute and rule is to allow the Attorney General to take appropriate action and thus protect the public's interest in the result of the suit. *See Cummins v. Shipp*, 156 Tenn. 595, 38 S.W.2d 1062 (1928). In the instant case, although the state is party, the state had no opportunity to take appropriate action in defense of the constitutionality of the guidelines. The court's action came after the arguments on the motion to alter or amend had been concluded, and the

court furnished the parties with its "Finding of Fact" which declared the unconstitutionality of the guidelines. There was no opportunity for the state to then attempt to defend the constitutionality. Due to the timing, the constitutional issue is analogous to raising that issue for the first time on appeal, because under the peculiar circumstances of this case, the appeal is the only opportunity the state had to defend the guidelines.

The posture of this case is somewhat unusual in that we are not dealing with a party raising a constitutional issue for the first time in a post-trial motion. As our Supreme Court noted in *In Re: Adoption of Female Child, E.N.R.*, No. M1998-00417-SC-R11-CV, 2001 WL 333140 (Tenn. April 6, 2001):

> We are of the opinion that there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all. *See Mallicoat v. Poynter*, 722 S.W.2d 681, 682 (Tenn. Ct. App. 1986).

*Id.* at *5. In *Lawrence v. Stanford*, 655 S.W.2d 927 (Tenn. 1983), the Court said:

> It has long been the general rule that questions not raised in the trial court will not be entertained on appeal and this rule applies to an attempt to make a constitutional attack upon the validity of a statute for the first time on appeal unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity for any discussion. *City of Elizabethton v. Carter County*, 204 Tenn. 452, 321 S.W.2d 822 (1958); *Veach v. State*, Tenn., 491 S.W.2d 81 (1973); *Harrison v. Schrader*, Tenn., 569 S.W.2d 822 (1978); *Dorrier v. Dark*, Tenn., 537 S.W.2d 888, rehearing 540 S.W.2d 658 (1976). Rule 36A TRAP. Since the constitutional validity of T.C.A. § 63-1234, was not raised in the trial court no opportunity was afforded for the introduction of evidence which might be material and pertinent in considering the validity of the statute.

*Id.* at 929.

We find that the child support guidelines are not "so obviously unconstitutional on its face as to obviate the necessity for any discussion." *Id.* Our conclusion is fortified by the several occasions that the guidelines have been before our Supreme Court without any concern regarding the guidelines' constitutionality. *See State, ex rel. Coleman v. Clay*, 805 S.W.2d 752 (Tenn. 1991); *Nash v. Mulle,* 846 S.W.2d 803 (Tenn. 1993); *Jones v. Jones*, 930 S.W.2d 541 (Tenn. 1996); *Brooks v. Brooks*, 992 S.W.2d 403 (Tenn. 1999).

Therefore, we hold that the trial court improperly adjudicated the issue of the constitutionality of the guidelines, because the issue of constitutionality was not timely presented in order to properly litigate the issue.

Moreover, as we noted, the trial court raised the constitutional issue *sua sponte*, and it appears that there was no need to do so. It is the duty of all courts to pass on constitutional questions only when it is absolutely necessary for the determination of the case and of the rights of the parties to the litigation. *See Delaney v. Thompson*, 982 S.W.2d 857 (Tenn. 1998). In the instant case, the trial court could have attempted to construe the statute in a manner to allow the credit for subsequently ordered child support, although such construction may or may not be a correct construction. Under these circumstances, we feel that the trial court acted precipitously in deciding a constitutional question.

In view of our decision on the first issue, we pretermit the second issue.

Under the third issue for review, appellant attacks the trial court's treatment of back support and arrearages. Appellant first asserts that the trial court erred by failing to award Ms. Coleman an appropriate amount of back support. Ms. Coleman was seeking retroactive support for the period of March 10, 1989 (the child's birthdate) to February 8, 1991 (when the paternity action was initiated). The back support was not previously addressed at the time paternity was established. The juvenile court awarded $1,000.00 for this period, and Ms. Coleman asserts that this was a deviation from the guidelines and without any justification therefor. On this point, the guidelines provide:

> In cases where initial support is being set, a judgment must be entered to include an amount due for monthly support from the date of the child's birth or date of separation or date of abandonment whichever is appropriate, until the current support order is entered. This amount must be calculated based upon the guidelines using the average income of the obligor over the past two years and is presumed to be correct unless rebutted by either party.

Tenn.Comp. R. & Regs. 1240-2-4-.04(1)(e).

The trial court has discretion to deviate from the guidelines, but if there is a deviation, there must be a written finding that application of the guidelines "would be unjust or inappropriate in order to provide for the best interests of the child or the equity between the parties." T.C.A. § 36-2-311(a)(11)(Supp. 2000). *See also, State ex rel. Coleman v. Clay*, 805 S.W.2d 752 (Tenn. 1991) (applying prior law to the same effect).

The record indicates that the juvenile court did not follow the guidelines nor was there any explanation for the failure to do so. Therefore, the trial court must consider this issue on remand.

Appellants also take issue with the payment arrangements ordered by the court for the arrearages of both defendants. Appellants point out that the trial court failed to take into consideration the accumulation of the statutory interest on the arrearages. The trial court ordered Mr. Coleman's arrearages of $5,827.00 to be repaid at $15.00 per week, taking approximately seven and one-half years for the indebtedness to be retired. Mr. Williams's arrearages in the amount of $2,736.00 was to be repaid at $5.00 per week and would retire that debt in approximately ten and one-half years. The record does not indicate that the trial court heard any proof or delved into the reasonableness of the installment payments in light of the existing circumstances. In dealing with a similar problem concerning the reasonableness of the arrearage installment payments, this Court, in *Tallent v. Cates*, No. E1999-01168-COA-R3-CV, 2000 WL 823466 (Tenn. Ct. App. June 27, 2000), stated:

> While we do not have before us the kind of "initial support" order contemplated by the regulation, we consider it to be persuasive on (1) the use of the obligor's current income and (2) the goal of repayment within a reasonable time. Accordingly, we direct that the Trial Court shall consider those as factors in setting a payment plan that will cover the post judgment interest and result in the judgment being satisfied within a reasonable period of time.

*Id.* at *7.

In sum, the orders of the trial court are vacated. The case is remanded to the trial court for a determination of the periodic support award due from each defendant in keeping with the mandate of the child support guidelines and statutes. The court is also directed to determine the initial support award for Ms. Coleman as provided by the guidelines. Should there be any deviation in the amounts specified in the guidelines for current support payments or arrearages, the trial court shall comply with the mandate of the guidelines by providing a justification therefor. The trial court is also directed to reconsider the manner of the installment payments provided for payment of the arrearages for both defendants and to determine, after a hearing, the reasonable amount of installment payments. Costs of the appeal are assessed against the respondents, James Coleman and Kenneth Williams, equally.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.