IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 11, 2000 Session

## BRENDA F. SANDUSKY v. DANNY J. SANDUSKY

**Appeal from the Chancery Court for Wayne County**
**No. 7900    Jim T. Hamilton, Judge**

———————————————

**No. M2000-00288-COA-R3-CV - Filed April 5, 2001**

———————————————

This appeal marks the third time that disputes over the child support provisions in the Sanduskys' 1988 marital dissolution agreement have reached this court. After we remanded the second appeal to calculate Mr. Sandusky's child support arrearage and to award Ms. Sandusky her legal expenses, Mr. Sandusky asserted new and different grounds to evade paying child support and also asserted that he should receive a credit against his arrearage because he had paid for a portion of his daughter's wedding. Following a bench trial, the Chancery Court for Wayne County terminated Mr. Sandusky's child support obligations regarding both of his children and reduced his arrearage by the amount of his financial contribution to his daughter's wedding. The trial court also awarded Ms. Sandusky only a portion of her legal expenses and declined to award her any discretionary costs. Ms. Sandusky asserts on this appeal that the trial court erred by relieving Mr. Sandusky of his child support obligations, by reducing Mr. Sandusky's arrearage by the amount of his contribution to his daughter for her wedding, by miscalculating the interest on Mr. Sandusky's arrearage, and by refusing to order Mr. Sandusky to pay all her legal expenses and discretionary costs. We agree with each of Ms. Sandusky's arguments. Therefore, we reverse the trial court's February 4, 2000 order and remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

W. C. Keaton, Hohenwald, Tennessee, for the appellant, Brenda F. Sandusky.

James Y. Ross, Sr., Waynesboro, Tennessee, for the appellee, Danny J. Sandusky.

### OPINION

In April 1988, Danny J. Sandusky and Brenda F. Sandusky were divorced on the ground of irreconcilable differences in the Chancery Court for Wayne County. The final decree incorporated

a marital dissolution agreement that had been negotiated by the parties. In accordance with their marital dissolution agreement, Ms. Sandusky received custody of their two minor children, and Mr. Sandusky, a successful and affluent businessman, agreed

> that he [will] pay all the expenses associated with the reasonable comfort, support, maintenance, health and education of each of the parties [sic] [c]hildren until each of the said [c]hildren reaches the age of eighteen (18) years of age or sooner dies. The [w]ife will provide the [h]usband with copies of receipts, invoices, cancelled checks, or statements evidencing expenditures made as obligations incurred by the [w]ife on behalf of each child or both [c]hildren.

> \* \* \*

> In the event any or all of the parties' [c]hildren should desire to attend college or vocational school upon his or her graduation from high school, the [h]usband agrees to provide a four (4) year college or vocational education for that child. The expenses to be paid by the [h]usband toward the college or vocational education for each [c]hild shall include, but not be limited to, tuition, room, board, fees, clothing, medical, and dental expenses, transportation to and from school, books, supplies, and a reasonable spending allowance. Each [c]hild shall have the right, after consultation with both parents, to select the college or vocational institution he or she desires to attend.

Mr. Sandusky decided to ignore the agreement and engaged in several business transactions for the sole purpose of evading his child support obligations in the marital dissolution agreement.[1] In January 1994, Ms. Sandusky filed a petition in the trial court seeking to modify the divorce decree and to hold Mr. Sandusky in contempt for willfully refusing to reimburse her for $15,000 in child support expenses. Mr. Sandusky responded by claiming that he was financially unable to pay these expenses. Following a hearing in August 1995, the trial court filed an order on April 22, 1996, directing Mr. Sandusky to reimburse Ms. Sandusky $10,000 in back child support, setting Mr. Sandusky's future child support obligation at $2,667.67 per month,[2] and ordering Mr. Sandusky to pay $6,614.90 toward the legal expenses Ms. Sandusky had incurred. We affirmed this judgment. *Sandusky v. Sandusky*, No. 01A01-9605-CH-00209, 1996 WL 730288 (Tenn. Ct. App. Dec. 20, 1996) (No Tenn. R. App. P. 11 application filed) ("*Sandusky* I").

---

[1] For example, Mr. Sandusky "sold" his trucking company to his father for $1,000 and the assumption of the corporate debts. In 1996, the trucking company listed $814,209 in assets and $181,347 in debt. The company also had $600,000 in retained earnings in 1996.

[2] The trial court calculated the amount of Mr. Sandusky's child support by attributing to him an annual salary of $100,000.

Mr. Sandusky continued to refuse to honor his child support obligations, and Ms. Sandusky was forced to file a second contempt petition in March 1996. During the contempt hearing, Mr. Sandusky announced defiantly that he had no intention of complying with any of the orders requiring him to reimburse Ms. Sandusky for child support expenses she had incurred. The trial court found that Mr. Sandusky was in contempt for failure to pay child support and ordered him to pay Ms. Sandusky $46,864.96 – the amount of the arrearage at the time. True to his boast, Mr. Sandusky declined to comply with the trial court's orders. On April 17, 1997, Ms. Sandusky filed her third contempt petition. Following a hearing, the trail court ordered Mr. Sandusky to pay the current arrearage in the amount of $23,648.27. The trial court also determined that Mr. Sandusky's monthly child support obligation would be reduced to $1,750 following his daughter's graduation from high school.

After the parties' daughter graduated from high school and began attending Columbia State Community College, Mr. Sandusky unilaterally decided to pay Ms. Sandusky $688 per month in child support rather than the $1,750 ordered by the trial court. He also declined to pay for all his daughter's educational expenses and decided that he would pay only her tuition, books, and $600 per month in living expenses. These actions forced Ms. Sandusky to file her fourth contempt petition. Following hearings in December 1997 and January 1998, the trial court (1) calculated Mr. Sandusky's arrearage at $6,372 and directed him to pay this down in monthly installments of $100 per month, (2) reduced Mr. Sandusky's obligation to support his remaining minor child from $1,750 to $865 per month based on Mr. Sandusky's testimony that his salary had declined significantly, and (3) limited Mr. Sandusky's obligation to pay his daughter's college expenses to her tuition, books, and $600 per month for living expenses. The trial court also declined to award Ms. Sandusky any of her legal expenses incurred as a result of filing her fourth contempt petition.

Ms. Sandusky appealed these decisions, and this case came before us a second time. On this occasion, we concluded that the trial court had erred by reducing Mr. Sandusky's child support from $1,750 to $865 per month because Mr. Sandusky had manipulated his income simply to avoid paying child support. We also concluded that Mr. Sandusky could not unilaterally alter the terms of the marital dissolution agreement relating to his children's college education and that his daughter had demonstrated that she was entitled to payment of her tuition, fees, and $1,153 per month in living expenses. We also determined that Mr. Sandusky must reimburse Ms. Sandusky for the legal expenses she had incurred in her efforts to require Mr. Sandusky to honor the child support provisions of the marital dissolution agreement. Accordingly, we remanded the case to the trial court to do three things: (1) calculate the amount of Mr. Sandusky's arrearage from April 1997, (2) calculate the interest accrued on this arrearage, and (3) calculate and award Ms. Sandusky her reasonable legal expenses incurred at trial and on appeal. *Sandusky v. Sandusky*, No. 01A01-9808-CH-00416, 1999 WL 734531 (Tenn. Ct. App. Sept. 22, 1999) (No Tenn. R. App. P. 11 application filed) ("*Sandusky* II").

What should have been a relatively straightforward proceeding on remand was again complicated by Mr. Sandusky's continuing efforts to evade his child support obligations. In addition to disagreeing about the amount of the arrearage accumulated after April 1997 and the

reasonableness of Ms. Sandusky's legal expenses, Mr. Sandusky came up with three more arguments for reducing his child support. First, he asserted that his obligation to support his son ceased in May 1999 when the boy graduated from high school even though he did not become eighteen until September 1999. Second, Mr. Sandusky insisted that he was no longer required to pay for his daughter's education because she had married sometime in late 1999. Third, he asserted that he was entitled to a $5,000 credit against his arrearage because he had given his daughter $5,000 to help defray the costs of her wedding.

The trial court agreed with Mr. Sandusky on every point. In an amended order filed on February 4, 2000, the trial court determined that Mr. Sandusky's arrearage between April 1997 and December 1999 was $35,582.09 and that the post-judgment interest on the arrearage was $2,754.32.[3] This calculation reflects the trial court's decision that Mr. Sandusky's obligation to support his son ceased when the son graduated from high school in May 1999. The trial court also found that Mr. Sandusky's arrearage for his daughter's education expenses was $10,629.46 and that the post-judgment interest on that arrearage was $57.66. This calculation reflects the trial court's conclusion that Mr. Sandusky was no longer required to pay his daughter's college expense because she was now married and that Mr. Sandusky was entitled to a credit for his $5,000 gift to his daughter to assist with her wedding expenses. The trial court awarded Ms. Sandusky only $5,500 of her $14,347.14 in legal expenses. Notwithstanding this court's September 22, 1999 opinion, the trial court decided that Ms. Sandusky was not entitled to all her legal expenses because the marital dissolution agreement was vague, and because none of these legal expenses would benefit the children directly. Without explanation, the trial court denied Ms. Sandusky's request for discretionary costs. Ms. Sandusky has appealed, and this case is now before us for the third time.

# I.
## MR. SANDUSKY'S OBLIGATION TO SUPPORT HIS SON

We turn first to Ms. Sandusky's argument that the trial court erroneously determined that Mr. Sandusky's obligation to support his son ended in May 1999 when the boy graduated from high school. She insists that the trial court erroneously interpreted Tenn. Code Ann. § 34-11-102(b) (1996). We agree.

Biological parents have a common-law and statutory duty to support their children until their children reach the age of majority. *Smith v. Gore*, 728 S.W.2d 738, 750 (Tenn. 1987); *State ex rel. Grant v. Prograis*, 979 S.W.2d 594, 600-01 (Tenn. Ct. App. 1997). This obligation is joint and several, Tenn. Code Ann. § 34-11-102(a), and the extent of the obligation depends upon the parent's ability to provide support. *Hall v. Jordan*, 190 Tenn. 1, 11, 227 S.W.2d 35, 39 (1950); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 247 (Tenn. Ct. App. 2000). Because the age of majority is now

---

[3]The trial court stated: "[T]he total child support arrearage of the Defendant should be based on the summary of the Defendant, plus post-judgment interest in accordance with the summary of the Plaintiff [minus interest on the new arrearage for the months of June, July, August and September, 1999, and interest on lump sums of Eleven Thousand Three Hundred Sixty-nine Dollars and thirty-four cents ($11,369.34) and Forty-one Thousand Thirty-nine Dollars and thirty-four cents ($41,039.34)] for the period of April, 1997, through December, 1999."

eighteen in Tennessee, Tenn. Code Ann. §§ 1-3-105(1), -113(a) (Supp. 2000), a parent is not required to support his or her child after the child's eighteenth birthday if the child has graduated from high school. However, if a child is still in high school on his or her eighteenth birthday, the parents' support obligation continues "until the child graduates from high school or the class of which the child is a member when the child attains the age of eighteen (18) graduates, whichever occurs first." Tenn. Code Ann. § 34-11-102(b).

There are two well-established exceptions to this rule. The first exception is that parents may be required to support a child past his or her eighteenth birthday if, because of injury or illness occurring during minority, the child is unable to support himself or herself. *Howard v. Howard*, 991 S.W.2d 251, 256 (Tenn. Ct. App. 1999); *Sayne v. Sayne*, 39 Tenn. App. 422, 427, 284 S.W.2d 309, 312 (1955); *Day v. Gatewood*, No. 02A01-9805-CV-00141, 1999 WL 269928, at *3 (Tenn. Ct. App. Apr. 30, 1999) (No Tenn. R. App. P. 11 application filed). The second exception is that a biological parent may contractually extend his or her obligation to support a child beyond the child's eighteenth birthday. *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975); *Hawkins v. Hawkins*, 797 S.W.2d 897, 898 (Tenn. Ct. App. 1990). These agreements are enforceable as contractual obligations even after they have been incorporated into a divorce decree. *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975); *Hennigan v. Hennigan*, No. 01A01-9807-CH-00380, 1999 WL 330173 at * 2 (Tenn. Ct. App. May 26, 1999) (No Tenn. R. App. P. 11 application filed).

The trial court's decision that Mr. Sandusky's obligation to support his son ended in May 1999 when the boy graduated from high school is wrong for two reasons. First, it is based on a misinterpretation of Tenn. Code Ann. § 34-11-102(b). The sole purpose of Tenn. Code Ann. § 34-11-102(b) is to extend parents' obligation to support children who reach eighteen years of age before graduating from high school. It does not permit parents to stop supporting children who graduate from high school before their eighteenth birthday. Thus, even though Mr. Sandusky's son graduated from high school in May 1999, Mr. Sandusky's support obligation continued until his son's eighteenth birthday in September 1999.

The second reason why the trial court erred by cutting off Mr. Sandusky's obligation in May 1999 is that this decision overlooks the plain language in the marital dissolution agreement in which Mr. Sandusky agreed to "pay all the expenses associated with the reasonable comfort, support, maintenance, health and education of each of the parties [sic] [c]hildren until each of the said [c]hildren reaches the age of eighteen (18) years of age or sooner dies." By virtue of this agreement, Mr. Sandusky became contractually obligated to support his son until the boy reached the age of eighteen, notwithstanding when he graduated from high school.

The trial court had no basis for relieving Mr. Sandusky of his obligation to support his son until September 1999. Therefore, the trial court's calculation of Mr. Sandusky's child support arrearage is in error because it does not include the support that Mr. Sandusky should have paid between May and September 1999. Mr. Sandusky should have been paying Ms. Sandusky $1,750 per month for this five-month period. Accordingly, Mr. Sandusky's child support arrearage should be increased by $8,750 together with the appropriate post-judgment interest.

## II.
## MR. SANDUSKY'S OBLIGATION FOR HIS DAUGHTER'S COLLEGE EXPENSES

Ms. Sandusky also takes issue with the trial court's conclusion that Mr. Sandusky's obligation to pay his daughter's college expenses ended with her marriage. She insists that Mr. Sandusky's contractual obligation to pay for his daughter's college education is not conditioned on her remaining single. We agree.

The Sanduskys' daughter graduated from high school and turned eighteen in 1997. She also enrolled at Columbia State Community College following her graduation from high school. Mr. Sandusky did not agree with her choice of college and expressed his disagreement by refusing to provide her with the financial support required by the Sanduskys' 1988 marital dissolution agreement. His refusal to pay for his daughter's reasonable college expenses was the subject of *Sandusky* II. We held in *Sandusky* II that the marital dissolution agreement was not ambiguous and that it should be enforced according to its terms and that Mr. Sandusky had obligated himself to pay his daughter's room, board, fees, clothing, medical and dental expenses, transportation to and from school, books, supplies, and a reasonable spending allowance. Accordingly, we required Mr. Sandusky to pay his daughter's tuition and fees when billed by the college and $1,153 per month for nine months each year for a four-year education. *Sandusky v. Sandusky*, 1999 WL 734531, at *5.

Mr. Sandusky continued to be unhappy about his obligation to pay for his daughter's college expenses. After we remanded the case to the trial court following our decision in *Sandusky* II, he complained to the trial court that this provision in the marital support agreement was unfair and inequitable and that he should be relieved of it because his daughter had married in late 1999. The trial court agreed and, after concluding that the marital dissolution agreement was vague and that Mr. Sandusky's daughter became fully emancipated upon her marriage, relieved Mr. Sandusky of any further obligation to pay for his daughter's college education.

This decision is legally flawed for two reasons. First, it overlooks the fact that Mr. Sandusky's daughter was fully emancipated in the eyes of the law when she became eighteen in 1997 – two years before her marriage. Thus, her marriage in 1999 did not add to or alter her emancipation. The common-law disability of coverture, abolished in Tenn. Code Ann. § 36-3-504(a) (1996), has absolutely nothing to do with the question of Mr. Sandusky's obligation to pay for his daughter's college education.

The second reason why the trial court's decision is flawed is that it overlooks the fact that Mr. Sandusky voluntarily agreed to pay for his daughter's college education. Even though he could easily have foreseen the possibility that she might marry before completing her studies, he did not insist on including a provision in the marital dissolution agreement conditioning his obligation to pay her college expenses on her remaining single. The courts must interpret contracts as they are written, *Sutton v. First Nat'l Bank*, 620 S.W.2d 526, 530 (Tenn. Ct. App. 1981), and are not at liberty to make a new contract for parties who have spoken for themselves. *Petty v. Sloan*, 197 Tenn. 630, 640, 277 S.W.2d 355, 359 (1955). Accordingly, the courts do not concern themselves with the

wisdom or folly of a contract, *Chapman Drug Co. v. Chapman*, 207 Tenn. 502, 516, 341 S.W.2d 392, 398 (1960), and are not at liberty to relieve parties from contractual obligations simply because these obligations later prove to be burdensome or unwise. *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993); *Carrington v. W. A. Soefker & Son, Inc.*, 624 S.W.2d 894, 897 (Tenn. Ct. App. 1981). Mr. Sandusky's dissatisfaction with the bargain he struck in 1988 does not provide grounds for relieving him of his obligation to comply with the plain language of the marital dissolution agreement as interpreted by this court.[4]

### III.
### MR. SANDUSKY'S RIGHT TO CLAIM HIS WEDDING GIFT AS A CREDIT

Ms. Sandusky and her daughter argue that the trial court erred by reducing Mr. Sandusky's child support arrearage by $5,000 – the amount that Mr. Sandusky gave to his daughter for her wedding. They insist that no legal or factual basis exists for this credit. We agree.

When the Sanduskys' daughter decided to be married in 1999, both she and Ms. Sandusky approached Mr. Sandusky about contributing to the cost of the wedding. Mr. Sandusky had heard that the wedding was going to be quite "big" and, as he testified later, "I'd done heard how big a wedding that they was going to have, and I knowed that I wasn't going to pay half of it then." However, he eventually agreed " to help on some wedding expenses" and eventually gave his daughter a check for $5,000. Mr. Sandusky believed that this $5,000 would be credited against his arrearage because the money was being used for his daughter's "expenses;" however, the record contains no evidence that he communicated this belief to his daughter. In fact, Mr. Sandusky's daughter testified that she never discussed this matter with her father and certainly did not leave him with the impression that his contribution would be credited against his arrearage.

By asserting his right to a $5,000 credit against his support arrearage, Mr. Sandusky is essentially seeking to enforce an oral contact with his daughter. An oral contract is certainly enforceable. *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d 764, 771 (Tenn. Ct. App. 1989). However, the person seeking to enforce an oral contract must prove mutual assent to its terms, *American Lead Pencil Co. v. Nashville, C. & St. L. Ry.*, 124 Tenn. 57, 63-64, 134 S.W. 613, 615 (1910); *Castelli v. Lien*, 910 S.W.2d 420, 426 (Tenn. Ct. App. 1995), and must also prove that the terms of the contract are sufficiently definite to be enforceable. *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990); *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 28 (Tenn. Ct. App. 1992). Mr. Sandusky's evidence fails on both counts.

---

[4]Mr. Sandusky complains that the marital dissolution agreement is unfair because it does not require his daughter "to make reasonable efforts to complete her college education in a timely manner, maintain a respectable grade point average and not subject to the control of her father." Mr. Sandusky was free to bargain for these conditions in 1988 but did not. However, we held in *Sandusky* II that Mr. Sandusky's obligation to pay his daughter's college expenses continued "for two semesters (nine months) each year for a four year education, so long as she [the daughter] attends college full time." *Sandusky v. Sandusky*, 1999 WL 734531, at *7.

Mr. Sandusky, as the party seeking to enforce this alleged oral agreement, did not carry his burden of proof, even in light of the trial court's observation that Mr. Sandusky was more credible on this point than his daughter.[5] He never testified that he and his daughter agreed that his $5,000 contribution to the cost of her wedding would be credited against his support arrearage. He merely asserted that it was his "understanding" that he would receive this credit because the money was being used for his daughter's "expenses."[6] One contracting party's unexpressed or uncommunicated intentions and understandings cannot bind the other party. *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d at 770; *Malone & Hyde Food Servs. v. Parson*, 642 S.W.2d 157, 159 (Tenn. Ct. App. 1982). Accordingly, Mr. Sandusky is not entitled to receive the credit against his arrearage because he did not carry his burden of proof.

## IV.
### MR. SANDUSKY'S ARREARAGE AND ITS POST-JUDGMENT INTEREST

Ms. Sandusky also takes issue with the manner in which the trial court calculated Mr. Sandusky's child support arrearage and the post-judgment interest on this arrearage. Specifically, she insists that the trial court overlooked the arrearage that had accumulated prior to April 1997 and failed to calculate the post-judgment interest on this arrearage in accordance with Tenn. Code Ann. § 36-5-101(a)(5) (Supp. 2000). We have determined that the record before us does not permit us to accurately calculate either Mr. Sandusky's arrearage or the amount of post-judgment interest he owes. Accordingly, we have no choice other than to remand the case, in accordance with Tenn. Code Ann. § 27-3-128 (2000), for a definitive calculation of Mr. Sandusky's child support arrearage and the post-judgment interest on this arrearage.

Mr. Sandusky's recalcitrance to honor his voluntarily assumed child support obligations has caused the parties and the judicial system to waste substantial time and financial resources over the past seven years. By January 1994, his child support arrearage was $10,000. By April 1997, the arrearage had increased to $23,648.27. In *Sandusky* II, we presumed, but did not hold or find, that Mr. Sandusky had paid Ms. Sandusky this money and had reduced the arrearage to zero. *Sandusky v. Sandusky*, 1999 WL 734531, at 6. Accordingly, our opinion in *Sandusky* II focused on the $6,372 arrearage that had accumulated between April 1997 and January 1998. *Sandusky v. Sandusky*, 1999 WL 734531, at *2, 4.

Ms. Sandusky now argues in her brief that "[w]e believe that the trial court over looked [sic] the previous arrearage." Because we do not have the complete record before us, we are unable to determine whether Ms. Sandusky's reference to the "previous arrearage" means the arrearage accumulated prior to April 1997 or the arrearage accumulated between April 1997 and January 1998.

---

[5]Where the trial judge has seen and heard the witnesses, especially where issues of credibility are involved, a reviewing court must give considerable deference to the trial court's findings. *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999).

[6]When asked why he believed that he would receive this credit, Mr. Sandusky stated: "Well, I was helping with Yolanda's expenses, not just giving her whatever they want or anything; that's why."

If the reference is to the former, Mr. Sandusky's arrearage should include all unpaid child support, including any arrearage accrued but yet unpaid prior to April 1997. If the reference is to the latter, we find that the trial court's error, if any, was corrected by the parties when they filed a stipulation in the trial court on October 6, 2000 – five days before the oral argument before this court – in which they agreed to all the payments that Mr. Sandusky had made since April 1997 and what his monthly arrearage would have been. Based on this stipulation, Mr. Sandusky's total arrearage for the period from April 1997 through October 2000 is $16,110.34.[7]

On remand, the trial court must first determine precisely when Mr. Sandusky's arrearage occurred. In making this determination, the trial court must take into consideration not only Mr. Sandusky's child support payments but also the payments he was and is obligated to make for his daughter's college education. In calculating the amount of Mr. Sandusky's arrearage, the trial court must first credit any payments Mr. Sandusky made to the child support due for the month in which the payment was received. Payments in excess of the child support due for that month may be credited toward the balance of the arrearage.

After the trial court has determined when Mr. Sandusky's arrearage occurred and how much it is, it must then determine the amount of post-judgment interest Mr. Sandusky owes on this arrearage. We cannot accept the parties' stipulation with regard to the amount of post-judgment interest for two reasons. First, the amount of this interest will depend upon the existence of any pre-April 1997 arrearage, if any. Second, the parties appear to have based their calculation of post-judgment interest on Tenn. Code Ann. § 47-14-121 (1995) rather than on the statute specifically governing post-judgment interest on a child support arrearage. Tenn. Code Ann. § 36-5-101(a)(5) provides, in part:

> If the full amount of the child support is not paid by the date upon which the ordered support is due, the unpaid amount is in arrears and shall become a judgment for the unpaid amounts and shall accrue interest from the date of the arrearage at the rate of twelve percent (12%) per annum. All interest which accumulates on arrearages shall be considered child support.

Accordingly, the post-judgment interest should have been calculated at the rate of twelve percent per annum, rather than the ten percent per annum rate normally applied to other judgments.

---

[7]This amount takes into consideration the trial court's errors when it reduced Mr. Sandusky's obligation to support his son from $1,750 to $865 and when it determined that this obligation ended in May 1999 rather than in September 1999.

# V.
## Ms. Sandusky's Reasonable Legal Expenses

Ms. Sandusky asserts that the trial court erred by not awarding her the full amount of the legal expenses she incurred in litigating this matter before the trial court and the court of appeals. She insists that our opinion in *Sandusky* II instructed the trial court to award her all, not only a portion, of her reasonable attorney's fees since Mr. Sandusky's unilateral conduct gave rise to the proceedings. We agree.

Spouses who are required to return to court to enforce their former spouse's child support obligations may recover their legal expenses. Tenn. Code Ann. § 36-5-103(c) (Supp. 2000). The purpose of permitting these awards is to protect and promote a child's right to support. Accordingly, requiring parents who frustrate child support orders to underwrite the expense of vindicating a child support order is appropriate. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

While decisions regarding requests for legal expenses are discretionary, *Placencia v. Placencia*, 3 S.W.3d 497, 504 (Tenn. Ct. App. 1999), awards for these expenses incurred by a spouse to vindicate child support rights are becoming familiar and almost commonplace. *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989); *Sherrod v. Wix*, 849 S.W.2d at 785. These awards are appropriate when the parent seeking to defend or to enforce a child support obligation prevails or when requiring the prevailing spouse to pay his or her legal expenses would inequitably reduce the amount of support the child receives. *Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997). A spouse who is otherwise entitled to an award for legal expenses should not be prevented from collecting them simply because he or she might be financially able to pay these fees on their own. *Gaddy v. Gaddy*, 861 S.W.2d 236, 241 (Tenn. Ct. App. 1992).

Ms. Sandusky has requested an award for legal expenses every time she has been required to seek the court's assistance to force Mr. Sandusky to honor his child support obligation. In *Sandusky* I, we affirmed the trial court's order requiring Mr. Sandusky to pay Ms. Sandusky $6,614.90 to defray the legal expenses she incurred in the trial court. *Sandusky v. Sandusky*, 1996 WL 730288, at *2. In *Sandusky* II, we reversed the trial court's decision not to award legal expenses to Ms. Sandusky and remanded the case to the trial court with directions to award Ms. Sandusky her reasonable legal expenses incurred both in the trial court and on appeal. *Sandusky v. Sandusky*, 1999 WL 734531, at *6. This remand instruction was binding on the trial court. *Inman v. Inman*, 840 S.W.2d 927, 933 (Tenn. Ct. App. 1992). Accordingly, the trial court was required to award Ms. Sandusky all her reasonable legal expenses incurred in the trial and appellate courts to vindicate her children's support rights between April 1997 when she filed her fourth contempt petition and September 22, 1999, the date we filed our opinion in *Sandusky* II. Accordingly, the trial court erred when it awarded her less than her full reasonable fee because of some notion that the marital dissolution agreement is somehow vague or that these legal expenses would not directly benefit the children. There is no question that the children have benefitted from Ms. Sandusky's efforts to require Mr. Sandusky to honor his obligations in the marital dissolution agreement.

-10-

We reach the same conclusion with regard to the legal expenses Ms. Sandusky has incurred after we remanded the case to the trial court in *Sandusky* II. It bears repeating that all the legal proceedings since 1994 have been precipitated by Mr. Sandusky's intransigence about his child support. Both parties could have avoided these expenses had Mr. Sandusky simply honored the commitments he made in the marital dissolution agreement. Regrettably, Mr. Sandusky undertook to evade his obligations by engaging in transactions designed to make him appear impoverished and by objecting to pay his child support on grounds lacking legal or factual support. Accordingly, we find that Ms. Sandusky is entitled to be reimbursed for all the legal expenses she reasonably incurred both in the trial court and this court since December 1999 when *Sandusky* II was remanded to the trial court, including whatever reasonable legal expenses she incurs following the remand of this case. When this case is remanded, Ms. Sandusky may submit an affidavit substantiating the nature and amount of these fees. After affording Mr. Sandusky a reasonable opportunity to rebut the reasonableness of the requested legal expenses, the trial court should give a judgment for the fees found to be reasonable using the standards of reasonableness found in Tenn. S. Ct. R. 8, DR 2-106.

## VI.
### THE AWARD FOR DISCRETIONARY COSTS AND EXPENSES

As a final matter, Ms. Sandusky takes issue with the trial court's decision not to award her $1,117.34 in discretionary costs and litigation expenses. The trial court reasoned that only a portion of these costs were incurred because of Mr. Sandusky's conduct and that requiring him to pay more than one-half of the costs would not benefit the parties' children. We have determined that Ms. Sandusky is entitled to an award for discretionary expenses in keeping with Tenn. R. Civ. P. 54.04(2).

Tenn. R. Civ. P. 54.04(2) empowers a trial court to award the prevailing party certain litigation expenses. These expenses include "reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or trials, and guardian ad litem fees." The purpose of awarding these costs is not to punish the losing party but to make the prevailing party whole. *Scholz v. S.B. Int'l, Inc.*, ___ S.W.3d ___, 2000 WL 1231430, at *5 (Tenn. Ct. App. Aug. 31, 2000), *perm. app. denied* (Tenn. Mar. 5, 2001). Even though a party is not automatically entitled to an award of discretionary costs under Tenn. R. Civ. P. 54.04(2) simply because it prevailed, *Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630, 644 (Tenn. Ct. App. 1993), the courts generally award discretionary costs if they are reasonable and if the party requesting them has filed a timely, properly supported motion satisfying the requirements of Tenn. R. Civ. P. 54.04(2). *Scholz v. S.B. Int'l, Inc.*, ___ S.W.3d at ___, 2000 WL 1231430, at *5; *Stalsworth v. Grummons*, 36 S.W.3d 832, 835 (Tenn. Ct. App. 2000); *Turner v. Turner*, No. 01A01-9506-CV-00255, 1997 WL 136448, at *17 (Tenn. Ct. App. Mar. 27, 1997) (No Tenn. R. App. P. 11 application filed).

Decisions to award discretionary costs are discretionary, *Stalsworth v. Grummons*, 36 S.W.3d at 835; *Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998), and thus, we employ a deferential standard when reviewing decisions either to award or to deny discretionary costs.

Ms. Sandusky is clearly the prevailing party in this case. She submitted the bills and invoices substantiating her request for $1,117.34 in litigation expenses in a timely manner, and the record contains no indication that Mr. Sandusky questioned that these expenses were incurred or otherwise took issue with the reasonableness of their amount. These expenses are of the sort that are routinely approved, and there is no indication in this record that any of these costs resulted from any improper litigation tactics by Ms. Sandusky. Therefore, the trial court lacked any legal or factual basis for refusing to award these costs to Ms. Sandusky.

## VII.

In summary, we reverse the trial court's conclusions with regard to Mr. Sandusky's past and future obligations to support his children and remand the case for further proceedings consistent with this opinion. Specifically, we hold (1) that Mr. Sandusky remained obligated to pay Ms. Sandusky $1,750 per month until September 1999 when their son became eighteen, (2) that Mr. Sandusky remains responsible for paying for his daughter's college education expenses consistent with this court's decision in *Sandusky* II, and (3) that Mr. Sandusky is not entitled to a $5,000 credit against his child support arrearage. In light of these decisions, the case is remanded to the trial court to properly calculate the amount of Mr. Sandusky's support arrearage and the post-judgment interest thereon and to give a judgment for Ms. Sandusky in that amount. The trial court shall also give a judgment to Ms. Sandusky for the full amount of her reasonable attorney's fees incurred both at trial and on appeal since April 1997, as well as the $1,117.34 in discretionary costs she incurred during this latest phase of this protracted litigation. We also tax the entire costs of this appeal to Danny J. Sandusky for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

-12-