**OAK RIDGE PRECISION INDUSTRIES, INC., Plaintiff–Appellant,**

v.

**FIRST TENNESSEE BANK NATIONAL ASSOCIATION, Defendant–Appellee.**

Court of Appeals of Tennessee, Eastern Section.

May 5, 1992.

Permission to Appeal Denied by Supreme Court July 27, 1992.

John Newton, Knoxville, Andy D. Lewis, Garner, Lewis & Prickett, Chattanooga, and B. Prince Miller, Cleveland, for plaintiff-appellant.

Stephen G. Anderson and Courtney N. Pearre, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, P.C., Knoxville, for defendant-appellee.

## OPINION

FRANKS, Judge.

In this action for breach of contract and numerous allegations of tortious conduct, the Trial Judge dismissed the contract claims without prejudice, on the basis they were compulsory counter-claims in the pending Anderson County litigation, and granted summary judgment on the remaining action.

## HISTORY OF THE CASE

Plaintiff was a tool and die manufacturing company in Oak Ridge, Tennessee, and Gilbert Galyon is the sole stockholder. In 1984, plaintiff entered a contract with Hurd Lock & Manufacturing Company ("Hurd") to manufacture a machine to assemble door and ignition locks. The contract was for $563,450.00 with a delivery date near the end of June, 1984.

Plaintiff was unable to complete the machine on time and sought financing from First Tennessee Bank ("FTB"). A series of loans were made, and on December 12, 1984, the loans were consolidated into one Note of $850,000.00. As work progressed on the Hurd machine, FTB loaned plaintiff an additional $110,660.00 through a series of 90–day Notes in January of 1985.

In February, 1985 FTB and plaintiff entered a revolving loan and security agreement, wherein FTB extended an additional $200,000.00 line of credit over and above the existing indebtedness. Under this agreement, FTB had the right to all of plaintiff's accounts receivable, and they were to be applied against advances made under the line of credit. Any payments from Hurd were to be applied against the consolidated Note.

In April of 1985, plaintiff's agreement with Hurd was amended to set a new delivery date and the price of the machine was increased to $862,500.00, the new date being June 15, 1985.

Deliveries of various components of the machine began in May and all components of the machine were delivered by June 21, 1985. A dispute arose between those parties that the specifications in the contract were not met, and on July 2, 1985, FTB declared plaintiff to be in default of the revolving loan and security agreement, and accelerated all the indebtedness if payment was not made within ten days. FTB then filed its action in the Anderson County Chancery Court seeking a writ of possession for all collateral, including accounts receivable, and asked for a deficiency judgment for any balance owing after the collateral was applied to the indebtedness. A default judgment was entered in the Anderson County Chancery Court, awarding possession of the collateral to FTB, and thereafter, plaintiff voluntarily surrendered its inventory, equipment, and other collateral. A foreclosure sale was held, but the proceeds inured to the benefit of Energy Bank, holder of a first lien on the collateral.

This action was filed in October of 1987 by plaintiff in the Circuit Court of Knox County. Plaintiff alleged FTB reneged on its promise to loan plaintiff some $4,000,000.00 for expansion into Jellico and $250,000.00 for company operations. In addition to the breach of the alleged loan contracts, plaintiff asserted FTB coerced it into entering the revolving credit agreement, exercised excessive and inappropriate control over plaintiff's daily management, reduced the profit plaintiff might have made from the Hurd contract, and deliberately destroyed the company. Plaintiff characterized these claims as fraudulent misrepresentation, promissory fraud, inducement to breach/tortious interference with contract, breach of fiduciary duty, breach of duty of good faith, fair dealing and negligence.

FTB moved to dismiss on the grounds that plaintiff's causes of action for breach of contract were compulsory counter-claims in the Chancery action, and the complaint otherwise failed to state claims on which relief could be granted.

FTB asked this Court to consider post judgment an order entered by the United States Bankruptcy Court for the Eastern District of Tennessee on December 12, 1988 *In the matter of Oakridge Precision Industries, Inc.* Plaintiff's brief argues it was improper for the Knox County Circuit Court to dismiss some of its claims as compulsory counter-claims in the Chancery Court, because the Chancery action had been stayed by the bankruptcy order. This argument misrepresents the bankruptcy order, and it is appropriate to consider the bankruptcy order under T.R.A.P. Rule 14. According to the terms of the order, the stay was lifted automatically once the Knox County Circuit Court had ruled, hence its date of effect, not its entry, is "post" our consideration, moreover, the bankruptcy court observed the bankruptcy petition and this action appeared to be attempts to circumvent the compulsory counter-claim rule.

In our review of the summary judgment, all affidavits and depositions must be viewed in the light most favorable to plaintiff, the motion's opponent and all legitimate inferences must be drawn in its favor. *See Union Planters v. Peat, Marwick, Mitchell,* 733 S.W.2d 509, (Tenn.App. 1987). On this standard we conclude that the Trial Judge correctly determined the record did not establish contracts for loans as alleged as a matter of law.

Plaintiff argues in support of the alleged $4,000,000.00 loan that a letter written by FTB's loan officer, Gary Gaylor, created this obligation. The letter stated:

> "Please be advised of our intent to loan or to participate in a loan of up to 4.0 million [sic] to Oak Ridge Precision Industries for thier [sic] expansion into Jellico, Tennessee. This comitment [sic] is based on acceptable terms, guarantees, and collateral which the bank feels is necessary."

Galyon agreed that the terms of the loan were never discussed and similarly, plaintiff asserts that a handwritten note on a $100,000.00 promissory note showed FTB's pledge for the $250,000.00 loan. Again the terms of this loan were not discussed. Finally, plaintiff offers testimony of two bankers, Jerre Haskew and Odie Majors, and argues the evidence constitutes an enforceable promise to make the loans.

In *Jamestowne on Signal, Inc. v. First Federal Savings & Loan,* 807 S.W.2d 559 (Tenn.App.1990), we addressed the elements necessary to establish an enforceable agreement to loan money. As in this case, the lender had made a series of loans over time to the borrower. When the loans stopped and the lender ultimately foreclosed, the borrower asserted the lender's breach of an oral promise to lend more money had prompted its default. A jury verdict for the borrower was affirmed by the Trial Judge and this Court reversed. A contract must be sufficiently definite to be enforced. *Id.* at 564. Taking the borrower's evidence in that case as true, as we do herein, the proof of the terms was insufficient as a matter of law. *Id.* We said:

> "The problem with the agreement stems not from what was agreed upon, but from the lack of showing of any agreement which contains the essential ingredients to form an enforceable contract. The agreement was intended to cover the loaning of a substantial amount of additional money. However, there is no showing of [the loan's essential elements] such as *the amount to be loaned, the duration of the loan, how it was to be repaid, the rate of interest to be paid and when, what security, if any, was to be given." Id.* at 564–65. (Emphasis supplied).

Plaintiff admits it can offer no proof on the total loan amounts, their duration, their repayment schedule, interest, and collateral. Proof of the alleged agreement is inadequate as a matter of law. Summary judgment was appropriate on this issue. T.R.C.P. 56.03.

Plaintiff asserts three acts by FTB established the issue on its claim for fraud and

misrepresentation, i.e., loan officer Gaylor's promise to loan $4,000,000.00 when his loan authority was limited to $25,000.00; FTB's promise to loan $250,000.00 in exchange for a renegotiated contract with Hurd; and FTB's officer William Flagle's false promise to fund the payroll if plaintiff would deliver the Hurd machine on time.

■ The elements of fraud are an intentional misrepresentation with regard to a material fact; knowledge of the representation's falsity, i.e., it was made "knowingly" or "without belief in its truth" or "recklessly" without regard to its truth or falsity; the plaintiff reasonably relied on the misrepresentation and suffered damages; and the misrepresentation relates to an existing or past fact. *Stacks v. Saunders,* 812 S.W.2d 587, (Tenn.App.1990). Claims based on promissory fraud must embody a promise of future action without the present intention to carry out the promise. *Id.* at 593.[1]

■ The action for fraud fails as a matter of law. All three incidents embody a promise of future actions to loan money to meet the payroll. By definition, they do not misrepresent a past or present fact. Gaylor's loan authority at the time of his representation might fall into such a category if reliance on his short, nonspecific letter was not so patently unreasonable. *See Lonning v. Jim Walter Homes, Inc.,* 725 S.W.2d 682 (Tenn.App.1986).

■ Similarly, the same nonspecificity that makes the two alleged loans unenforceable renders plaintiff's reliance on them unreasonable for purposes of an action in promissory fraud. As the Trial Judge noted, plaintiff cited to nothing in the record to demonstrate that FTB made representations without present intent to perform.[2]

■ As to the allegations that FTB interfered with plaintiff's business and induced others to breach, the elements of such action are a legal contract; the wrongdoer's knowledge of the contract; an intent to induce breach; malice; breach; proximate cause between the malicious act and the breach; and damages as a result. *Campbell v. Matlock,* 749 S.W.2d 748 (Tenn.App. 1987). The cause of action has now been codified and may not be enforced except upon a "clear showing". Tennessee Code Annotated § 47–50–109. The statute provides that the proper plaintiff is the contracting party injured by the breach, not the breaching party.

Plaintiff alleges that FTB induced breach by redirecting its deposits, paying some creditors and not others, making personnel and management decisions, restricting plaintiff's IRS payments, and accelerating plaintiff's debt. The Trial Court summarized this by saying FTB's actions allegedly caused plaintiff to be unable to meet its contractual obligations with others. But in a related case, plaintiff was found to have breached its contract with Hurd. (*First Tennessee Bank National Association v. Hurd Lock & Mfg. Co.,* 816 S.W.2d 38 (Tenn.App.1991).) Plaintiff's insistence that Hurd was in breach is contrary to established facts. Plaintiff is indisputably the breaching party in its contracts with Hurd and cannot maintain its action for tortious interference and inducement to breach.

■ While there is implied in every contract a duty of good faith and fair dealings, the duty depends upon the individual contract and the facts of the case. *TSC Industries v. Tomlin,* 743 S.W.2d 169 (Tenn.App.1987). To the extent that plaintiff claims the duty was breached relative to the revolving credit agreement, the action is a compulsory counter-claim, mandatorily relegated to the Anderson County Chancery action. To the extent that plaintiff's allegation of breach of this duty per-

---

1. Defendant erroneously asserts that this jurisdiction has not adopted promissory fraud. The Supreme Court has indicated a willingness to apply this doctrine for over a decade. *See Fowler v. Happy Goodman Family,* 575 S.W.2d 496 (Tenn.1978), and we affirmed a trial court ap-

plying this doctrine in *Steed Realty v. Oveisi,* 823 S.W.2d 195 (Tenn.App.1991).

2. This must be established by evidence other than either the failure to keep the promise or the subjective impression of the promisee. *Stacks,* p. 593.

tains to the promises to loan money, the promises themselves are unenforceable as a matter of law. It follows that if the promises are inherently unenforceable, any refusal to honor such promises cannot constitute a breach of good faith. *Cf. TSC Industries*, (holding if the underlying contract is unenforceable, there can be no recovery for inducement to breach).

 Finally, to the extent that plaintiff alleges an independent tort, it fails to state a claim on which relief can be granted. Such claim must be grounded in the bad faith refusal of a party to comply with an agreement which establishes its duties. The record contains no evidence of a requisite agreement.

 Plaintiff did not allege a set of facts which, if true, would support a claim for breach of fiduciary duty. Although fiduciary relationships may arise whenever confidence is reposed by one party in another who exercises dominion and influence, the dealings between a lender and borrower are not inherently fiduciary absent special facts and circumstances. *McErlean v. Union National Bank of Chicago*, 90 Ill.App.3d 1141, 46 Ill.Dec. 406, 414 N.E.2d 128, (1980). Plaintiff does not describe itself as a customer who reposed an unusual degree of trust and confidence in an overreaching banker. Instead, plaintiff represents itself as an entity that had become too large and sophisticated to rely on small banks for its needs. Plaintiff's sole stockholder said he was on the brink of negotiating a successful foreign contract when his business folded. As early as the fall of 1984, plaintiff described its relationship with FTB as one in deterioration. By the time plaintiff signed the revolving credit agreement, it had hired a Knoxville law firm to represent it in negotiations with FTB. In sum, there is no set of facts which could be established or is suggested by this record from which a reasonable factfinder could conclude plaintiff's transactions with FTB were ever anything but arms' length transactions.

 Finally, plaintiff's claim based on negligence fails. Plaintiff's complaint avers FTB was liable for negligence in the mismanagement of plaintiff's affairs, "included but not limited to the collection and handling of accounts receivable". Explicit acts alleged to be negligent relate to FTB's administration of its loans with plaintiff. Insofar as a breach of contract action is concerned, it matters not whether the breach was intentionally or unintentionally caused by negligence in attempting performance, the action remains in contract. *Harvest Corp. v. Ernst & Whinney*, 610 S.W.2d 727, (Tenn.App.1980). Moreover, plaintiff in its complaint failed to allege its damages did not arise from breach of contract. The alleged claim for negligence sounds in contract, and dismissal was proper.

Much of plaintiff's lengthy complaint was an attempt to recast its contractual counter-claim in language of tort. Accordingly, on the foregoing analysis we affirm the judgment of the Trial Court and remand with costs of appeal assessed to the appellant.

SANDERS, P.J., and McMURRAY, J., concur.