# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
November 9, 2010 Session

## MORGAN DEVELOPMENT, LLC, ET AL. v. RAYMOND W. MORROW, ET AL.

### Appeal from the Circuit Court for Roane County
### No. 13484     Russell Simmons, Jr., Judge

### No. E2010-00610-COA-R3-CV - Filed February 23, 2011

This appeal involves a failed real estate transaction. Real estate brokers and Raymond Morrow ("Seller") entered into an agreement to show an unlisted property. Seller did not own the property, but he claimed to have the property under contract with the owner. After the brokers showed the property to Morgan Development and Del Morgan ("Buyers"), Buyers and Seller entered into an agreement for the sale of the property. The transaction was never completed because Seller could not deliver marketable title. Buyers initiated a lawsuit against the brokers along with Seller and the owners of the property, alleging negligent business representation and fraud. The brokers moved for summary judgment. The trial court granted summary judgment and dismissed Buyers' suit against the brokers because the purchase agreement included a disclaimer. Buyers appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Raymond E. Lacy and Anya R. East, Knoxville, Tennessee, for the appellants, Morgan Development, LLC and Del Morgan.

Bill W. Petty and Anne Greer, Knoxville, Tennessee, for the appellees, Realty Executives Associates, George Dykeman, and Steve Fogarty d/b/a Realty Executives Associates, Northshore Office.

Johnny V. Dunaway, LaFollette, Tennessee, for the appellee, Raymond W. Morrow.[1]

Charles D. Mounger, Jr., pro se appellee.[2]

## OPINION

## I. FACTUAL BACKGROUND

At issue in this matter is a parcel of land consisting of 1, 242 acres ("the Property") in Roane County, Tennessee. On January 1, 2005, Seller entered into an Agreement To Show Unlisted Property ("UPA") with George "Chip" Dykeman, who worked as a real estate broker for Realty Executives Associates, Inc. ("REA"). Mr. Dykeman worked as an independent contractor from REA's Northshore Office where Steve Fogarty served as the managing broker (collectively, "Brokers").

By signing the UPA, Seller represented that he "presently has title to the Property or has full authority to enter into the Agreement." According to Brokers, Seller met with Mr. Dykeman on several occasions about locating investors for the Property. In those meetings, Seller claimed that he and Eagle Rock Properties, Inc. ("Eagle Rock") had the Property under contract with the owner, Charles D. Mounger, Jr.

Pursuant to the UPA, Mr. Dykeman showed the Property to Buyers[3]. After viewing the Property, Buyers and Seller executed a Lot/Land Purchase Sale Agreement ("PSA") on February 18, 2005. Seller made repeated representations that he had a contract to purchase the Property, and Mr. Dykeman believed that Seller had the authority to sell the Property. Based on these representations, Buyers agreed to enter the PSA. The actual record owner of the Property was Katherine N. Mounger. Unbeknownst to Buyers and Brokers, Charles Mounger was not the sole owner of the Property; Ms. Mounger passed away leaving the Property to three heirs including Charles Mounger. Buyers claim that they could not ascertain Seller's interest in the Property by independent means and that they relied on Seller's and Brokers' representations. Buyers claim that they intended to market the Property immediately after the sale.[4]

---

[1]Mr. Morrow did not file a brief for this appeal.

[2]Mr. Mounger also did not file a brief for this appeal.

[3]Mr. Morgan is sole member and chief manager of Morgan Development, LLC.

[4]From the record, it is unclear how the Buyers intended to market the Property if the transaction were

(continued...)

The transaction failed to close because Seller never acquired rights in the Property. Thus, Seller could not deliver marketable title for the Property. Thereafter, Buyers filed a suit against Seller, Eagle Rock, REA, Mr. Dykeman, Mr. Fogarty, Charles D. Mounger, Jr., E. Jay Mounger, Katherine Mounger Lasater, and the Estate of Katherine Mounger ("Mounger Estate").[5] Buyers alleged negligent misrepresentation and fraud against Brokers, Seller, and Eagle Rock. Brokers then filed a motion for summary judgment for which a hearing was held in September 2008. After hearing the evidence, the trial court granted summary judgment in favor of Brokers and dismissed Buyers' claims. The trial court later dismissed the claims, without prejudice, against the remaining defendants, Seller and Eagle Rock. With the entry of dismissal against Seller and Eagle Rock, there was a final and appealable judgment and Buyers' appeal ensued. On appeal, Buyers challenged the trial court's grant of summary judgment in favor of Brokers.

## II. ISSUE

We consolidate and restate the issues raised by Buyers, as follows:

Whether the trial court erred in granting summary judgment in favor of Brokers.

## III. STANDARD OF REVIEW

In reviewing a trial court's grant of a motion for summary judgment, this court must determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). Our inquiry involves only a question of law with no presumption of correctness attached to the trial court's judgment. *Id*. Under Tenn. R. Civ. P. 56.04, "[s]ummary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Hannan v. Alltel Publ'g*, 270 S.W.3d 1, 5 (Tenn. 2008) (citing Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993)). In Tennessee, the moving party who does not bear the burden of proof at trial must either:

---

[4](...continued)
completed.

[5]E. Jay Mounger, Katherine Mounger Lasater, and the Mounger Estate (collectively, "Mounger Defendants") filed a motion to dismiss Buyers' claims, alleging that the complaint failed to state a cause of action. Additionally, in the motion to dismiss, they noted that in a separate lawsuit involving Seller, Eagle Rock, and the Mounger Defendants, the trial court held that Seller had no contractual relationship concerning the Property. Soon thereafter, Buyers filed a voluntary non-suit, and the trial court dismissed the Mounger Defendants by order of voluntary non-suit.

> (1)     affirmatively negate an essential element of the nonmoving
>         party's claim; or
>
> (2)     show that the nonmoving party cannot prove an essential
>         element of the claim at trial.

*Hannan*, 270 S.W.3d at 9. A "conclusory assertion" is not enough to shift the burden. *Id.* at 5 (quoting *Byrd*, 847 S.W.2d at 215). It is not enough for the moving party to "cast doubt on a party's ability to prove an element at trial." *Hannan*, 270 S.W.3d at 8.

Therefore, a properly supported motion for summary judgment demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See Martin v. Norfolk S.* Ry. *Co.*, 271 S.W.3d 76, 83 (Tenn. 2008); *see also Staples*, 15 S.W.3d at 88; *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party fails to make a properly supported motion, the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered, and the motion for summary judgment fails. *See Martin*, 271 S.W.3d at 83. If the moving party makes a properly supported motion, then the non-moving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *Id.* at 84 (supporting citations omitted).

## IV. DISCUSSION

Buyers challenge the trial court's grant of summary judgment in favor of Brokers. Buyers contend that Brokers had knowledge of Seller's lack of rights in the Property thereby creating a genuine issue of material fact for a factfinder to resolve. Buyers argue that summary judgment was inappropriate in light of this unresolved issue.

The trial court granted the motion for summary judgment because Brokers "had no knowledge that [Seller] did not have the authority to sell the subject property. . . ." The trial court also found that Buyers signed the PSA that included "a disclaimer relating to the realtors' obligation to the buyer and the seller." As a result, the trial court dismissed Buyers' claims against REA, Mr. Dykeman, and Mr. Fogarty.

The disclaimer that the trial court noted is contained in Paragraph Seven of the PSA. Paragraph Seven provides:

> Disclaimer. It is understood and agreed that the real estate firms and real estate licensee(s) representing or assisting the Seller or the Buyer are not parties to their Agreement and do not have or assume liability for the performance or nonperformance of Seller or Buyer. Buyer and Seller agree

that the Brokers shall not be responsible for any of the following, but not limited to, those matters which could have been revealed through a survey, flood certification, title search or inspection of the Property; for the necessity or cost of any repairs to the Property, any portion thereof, or any item therein; for the necessity or cost of any repairs to the Property; for hazardous or toxic materials; for the tax or legal consequences of this transaction; for the availability, capability, and/or cost of utilities, sewer, septic, or community amenities; for applicable boundaries of school districts or other school information. . .if any of these matters or any matters are of concern to them, they shall seek independent expert advice relative thereon.

The interpretation of a contract is a matter of law requiring de novo review on appeal. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). When the language of a contract is plain and unambiguous, courts "determine the parties' intention from the four corners of the contract, interpreting and enforcing [the contract] as written." *Union Realty Co. v. Family Dollar Stores of Tenn., Inc.*, 255 S.W.3d 586, 591 (Tenn. Ct. App. 2007) (citing *Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000)). If the language is clear and unambiguous, "the literal interpretation of the language controls the outcome of the contract disputes." *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). We construe all provisions of a contract in harmony with each other, "if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract." *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992).

Applying those principles to the contract at issue in this case, the language of the PSA is clear and unambiguous. Under the PSA, Brokers assumed no obligations relating to the title search. The disclaimer provision outlines that Brokers were not required to ensure the performance of either party to the transaction. However, Buyers contend that Brokers' duty to verify title was separate and independent from Brokers' duty to verify the existence of a valid contract establishing Seller's rights in the Property. While conceding that Brokers did not have a duty to verify the Property's title, Buyers assert that Mr. Dykeman, as a real estate agent, had a duty of due care when making representations regarding Seller's rights in the Property. They claim that Seller's rights in the Property were not a fact readily ascertainable by a prospective buyer. Buyers cite *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228 (Tenn. Ct. App. 1976) in support of their contention. In *Haynes*, this court held that a real estate agent for the defendant builder was "under an obligation to use due care in learning what the actual boundaries of the property were before he made representations concerning those boundaries." 546 S.W.2d at 232. Similarly, Buyers argue that Brokers were under a duty of due care because a title search would not have revealed Seller's relationship with the Property. We disagree.

We reject the argument advanced by Buyers for two key reasons. First, for Buyers' argument to prevail, we would have to adopt a narrow reading of the PSA's disclaimer provision. The disclaimer provision exempts Brokers from liability for the nonperformance of a party and those "matters which could have been revealed" through a title search. Here, while a title search would not have revealed Seller's rights in the Property, Buyers entered this agreement based on Seller's promise to perform the delivery of marketable title. By signing the PSA, Buyers agreed to rely on Seller's promise to perform and accepted that Brokers would not be responsible for Seller's failure to perform. Further, because a title search would have revealed the true owner was not Seller, Buyers took a gamble by accepting the terms of the PSA with the knowledge that a title search would not verify Seller's interest in the Property. Under the PSA, Brokers were under no legal obligation to verify the title or Seller's interest in the title. The disclaimer provision of the PSA evidences Brokers' intent to insulate themselves from liability and places the responsibility of exercising due diligence on the parties to the transaction. To adopt Buyers' position requires this court to ignore the clear language of the PSA.

Second, Buyers' reliance on *Haynes* is misplaced. In that case, the real estate agent made representations concerning the boundaries of the property without first learning the actual boundaries. 546 S.W.2d at 232. The agent worked on behalf of the defendant contractor, who mistakenly placed the boundary line, and this court held that the defendant contractor was liable for the agent's negligent misrepresentations. *Id.* The facts of the instant case are distinguishable from *Haynes*. Unlike *Haynes*, Buyers signed the PSA which included a disclaimer of Brokers' obligation to verify certain characteristics of the Property including the boundaries and the title. Further, the *Haynes* court found that it was reasonable for buyers to rely on the agent's representations. *Id.* Here, Buyers' concession that a title search would not verify Seller's rights in the Property begs the question of whether it was reasonable to rely on the representations that Seller held rights to the Property. A title search verifies ownership and uncovers any defects with a property's title. The PSA's disclaimer provides that Brokers were not responsible for uncovering any defects concerning the Property's title through a title search. Therefore, it follows that Buyer's reliance on Brokers' alleged representations about the title, including Seller's rights in the Property, was not justifiable. By acknowledging that Brokers were not under any duty to uncover the problems with the title, Buyers implicitly admit that any reliance on those unsupported representations was not justifiable.

In cases involving claims of negligent business representations, a plaintiff must establish:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977); *see also Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997). In actions for fraud, a plaintiff must prove four elements: (1) an intentional misrepresentation of a material fact; (2) knowledge of the representation's falsity; (3) an injury caused by reasonable reliance on the representation; and (4) the misrepresentation involves a past or existing fact. *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank*, 835 S.W.2d 25, 28 (Tenn. Ct. App. 1992) (citation omitted). In fraud cases, nondisclosure can be actionable when a duty to disclose exists and the undisclosed information is material. *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992).

In the instant case, Brokers' motion for summary judgment affirmatively negated essential elements of Buyers' claims of negligent misrepresentation and fraud. Through Mr. Dykeman's deposition and Mr. Fogarty's affidavit, Brokers demonstrated that they had no knowledge of Seller's deficient rights in the Property. In his deposition, Mr. Dykeman testified that he met with Seller several times about the Property. Mr. Dykeman explained that he "was told Mr. Mounger was the owner of the [P]roperty and Butch Morrow [Seller] and Eagle Rock had the [P]roperty tied up under contract." Mr. Dykeman further stated that he "did not know anything about the Mounger's estate or any other interests in the [P]roperty." Mr. Fogarty also provided through his affidavit that he was unaware of the details of the transaction. Mr. Fogarty averred:

> That I had no specific knowledge of the transaction between Mr. Morrow [Seller] and Mr. Morgan until sometime, probably late March or early April of 2005. Chip Dykeman came to me relaying that [Seller] was not returning his calls and he was having difficult contacting Morrow, and asked me for advice.

As the managing broker for the REA office, Mr. Fogarty handled administrative duties such as ensuring that all brokers maintained licensure and complied with statutory requirements. Thus, Mr. Fogarty had no involvement in "the specific day-to-day activities of the Independent Contractor Real Estate Agents" like Mr. Dykeman.

By showing a lack of knowledge on the part of Mr. Dykeman and Mr. Fogarty, Brokers made a properly supported motion for summary judgment thereby triggering Buyers' burden to produce evidence of specific facts establishing that issues of material fact exist.

Buyers offered the affidavit of Mr. Morgan in their Response to Brokers' Motion for Summary Judgment. Although Mr. Morgan's affidavit provided that Mr. Dykeman made a representation about Seller's rights in the Property, his affidavit failed to show why that representation was actionable under a theory of negligent misrepresentation or fraud.

Viewing the facts in the light most favorable to Buyers, the non-movant, we find that summary judgment was appropriate in this case. The trial court properly granted summary judgment in favor of Brokers because Buyers failed to produce proof highlighting facts that establish the elements of either claim. There is an absence of specific facts that demonstrate genuine issues of material fact relating to Brokers' duty and knowledge of Seller's deficient rights in the Property. Accordingly, we affirm.

## V. CONCLUSION

The trial court's grant of summary judgment is affirmed. Costs of this appeal are taxed to the appellants, Morgan Development, LLC and Del Morgan. This case is remanded, pursuant to applicable law, for collection of costs assessed below.

_____
JOHN W. McCLARTY, JUDGE

-8-