# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 24, 2011 Session

## THE BANK OF NASHVILLE v. CHARLES CHIPMAN, SR., ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 07-2723-IV      Russell T. Perkins, Chancellor**

---

**No. M2010-01581-COA-R3-CV - Filed August 5, 2011**

---

Defendant defaulted on a $300,000 loan from plaintiff bank. He subsequently renewed the loan but not before transferring certain assets to his wife. He never repaid the loan. The bank filed suit against the husband for breach of contract and fraud and against both defendants for fraudulent conveyance, conversion, civil conspiracy to defraud, and unjust enrichment. The bank also sought a lien lis pendens, a constructive trust, and a judicial sale and foreclosure. The trial court found against the husband with respect to the bank's claims for breach of contract and fraud (in renewing the loan), against the wife for unjust enrichment, and against both defendants for fraudulent conveyance. The court denied the bank's request for a constructive trust and a judicial sale and foreclosure. The parties appeal the trial court's disposition of claims for fraud, civil conspiracy to defraud, and unjust enrichment, as well as its decision not to impose a constructive trust. We find for the bank on its fraud (against the husband) and unjust enrichment (against the wife) claims. We find against the bank on its claims for civil conspiracy to defraud and the imposition of a constructive trust.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Stephen C. Knight and Nader Baydoun, Nashville, Tennessee, for the appellants, Charles Chipman, Sr., and Margie K. Chipman.

Joseph Robert Prochaska and Todd Hancock, Nashville, Tennessee, for the appellee, The Bank of Nashville.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2007, Charles Chipman withdrew $300,000 from his IRA account to invest in his used car business, Chipman Auto. In March 2007, Mr. Chipman borrowed $300,000 from The Bank of Nashville ("Bank") on a 90-day note in order to replenish those funds.[1] During the course of these negotiations, Mr. Chipman completed and executed a loan application and provided additional financial records to the Bank indicating his creditworthiness. Mr. Chipman failed to pay the amount owing upon maturity of the note.

In August 2007, Mr. Chipman signed a second financial statement and provided it to the Bank in order to renew the note for an additional 60 days. Prior to doing so, in July 2007 Mr. Chipman transferred his interest in two pieces of real property and a 39-foot boat to his wife, Ms. Chipman. Mr. Chipman did not repay the loan.

The Bank brought suit against Mr. Chipman on December 7, 2007. The Bank claimed that Mr. Chipman had defaulted on the second note and transferred his interest in real property to his wife for little or no consideration in order to fraudulently preclude creditors from taking his assets. The Bank filed an amended complaint naming Ms. Chipman as a defendant on February 6, 2008.

On August 29, 2008, the parties entered into an agreed order allowing for the sale of real property located at 132 Locke Court in Portland, Tennessee. As a condition to the sale, the Chipmans were required to deposit all proceeds with counsel for the Bank. On September 23, 2008, counsel for the Bank received the proceeds of the sale totaling $6,724.82.

The Bank filed a motion for a judgment on the pleadings against Mr. Chipman for his liability on the second note. On January 15, 2009, the court granted the motion for a money judgment in the amount of $306,006.17, plus interest accruing, costs and expenses, and attorney fees.

---

[1] Mr. Chipman was attempting to replace the withdrawn funds in order to avoid a tax obligation of approximately $90,000.

The Bank filed a second amended complaint against the defendants on October 30, 2009. The Bank asserted claims against Mr. Chipman for breach of contract,[2] fraud, fraudulent conveyance, conversion, civil conspiracy to defraud, and unjust enrichment. The bank asserted claims against Ms. Chipman for fraudulent conveyance, conversion, civil conspiracy to defraud, and unjust enrichment. The Bank also sought a lien lis pendens, a constructive trust, and a judicial sale and foreclosure.

The parties stipulated the material facts. A bench trial was held on May 17, 2010. The trial court issued a Memorandum and Order on June 18, 2010, and a Revised Memorandum and Order on July 7, 2010. The court held the following with respect to the Bank's claims:

- Fraud: Information about Mr. Chipman's net worth and monthly income submitted to the Bank in support of the loan was false. Mr. Chipman knew about the misrepresentations. The Bank failed to establish that Mr. Chipman secured the original loan with the intention of never repaying it; however, Mr. Chipman did not intend to repay the loan when he renewed it. Therefore, Mr. Chipman committed fraud against the Bank in renewing the loan. However, the relief granted the Bank on its breach of contract claim adequately compensates it for this claim.

- Fraudulent conveyance: Mr. Chipman made the conveyances to his wife for the primary purpose of delaying or defrauding creditors. Therefore, the transfers were fraudulent conveyances.

- Conversion: The Chipmans did not wrongfully appropriate tangible personal property belonging to the Bank.

- Civil conspiracy to defraud: There could be no civil conspiracy related to Mr. Chipman's conduct in obtaining the loan because Ms. Chipman was not aware that Mr. Chipman was seeking a loan or that Mr. Chipman needed to replenish his IRA.

- Unjust enrichment: The court denied the Bank's claim for unjust enrichment against Mr. Chipman because there was an enforceable contract between the parties covering the same subject matter for which the Bank had already been granted a judgment. However, Ms. Chipman did not sign the promissory note that precipitated the bank's

---

[2] In its July 7, 2010 order, the trial court noted that it awarded the Bank judgment on its breach of contract claim against Mr. Chipman in its January 15, 2009 order. The breach of contract claim is not at issue in this appeal.

breach of contract recovery against Mr. Chipman, and she received a benefit from the $300,000 in loan proceeds. Therefore, Ms. Chipman is also liable for the $300,000.

The court also denied the Bank's request for a constructive trust and a judicial sale and foreclosure.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

ANALYSIS

Both parties appeal the trial court's ruling. The Chipmans challenge the trial court's findings that Mr. Chipman obtained the renewal loan by fraud and that Ms. Chipman is liable for unjust enrichment. The Bank claims that the trial court erred by declining to find that Mr. Chipman obtained the original loan by fraud, declining to find that there was civil conspiracy to defraud, and declining to impose a constructive trust. The Bank also seeks attorney fees and costs on appeal.

Fraud

Both parties appeal the trial court's determination with respect to the Bank's claim for fraud. Mr. Chipman argues that the trial court erred in finding that he obtained the renewal loan by fraud while the Bank argues that the trial court erred in finding that Mr. Chipman did not obtain the original loan by fraud.

"The elements of fraud are: (1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006). The knowledge element of fraud contemplates representations made knowingly, without belief in their truth, or recklessly. *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 29 (Tenn. Ct. App. 1992). The party alleging fraud bears the burden of proving each element. *Hiller v. Hailey*, 915 S.W.2d 800, 803 (Tenn. Ct. App. 1995).

In this case, Mr. Chipman misrepresented his financial information in two instances on the documents provided in support of his loan. First, the consumer loan application

signed by Mr. Chipman states that his monthly gross salary is $32,000. At trial, Mr. Chipman testified that he had never earned that much income. Second, the personal financial statement signed by Mr. Chipman reflects total assets of $3,975,558 and total liabilities of $354,000, for a total net worth of $3,621,558. At trial, Mr. Chipman acknowledged that that information was inaccurate. For example, the personal financial statement listed Mr. Chipman's real estate to be worth $2,175,000; Mr. Chipman testified that those properties were actually worth approximately $790,000.

The trial court found that Mr. Chipman knew about the misrepresentations but allowed the loan to proceed because he was desperate to replenish his IRA in order to prevent a $90,000 taxable event from occurring. However, the trial court concluded that the Bank did not meet "its burden of showing that Mr. Chipman secured the original loan with the intention of never repaying it." Both parties agree that the trial court applied the wrong legal standard in arriving at that conclusion since the intent element of fraud refers to the misrepresentation, not to the injury (or intent to repay).

On appeal, Mr. Chipman argues that the Bank's reliance on the loan application and financial statements was not reasonable under the circumstances. Mr. Chipman lists many reasons in support of this conclusion, many of which are contradicted by the facts stipulated by the parties as well as testimony at trial.

Mr. Chipman first insists that none of the information provided to the Bank in support of the loan was provided directly by him. Instead, he claims that the information was filled out by someone else and the documents were given to the Bank by a loan broker, Ted Brown.[3] The parties stipulated that "Mr. Chipman signed the financial statement and provided it to The Bank of Nashville in order to obtain the loan." The stipulations also state that "Mr. Chipman completed and executed a loan application and provided additional financial records indicating his creditworthiness to [the Bank]." Mr. Chipman's only explanation for how the Bank got these documents was that the general manager of his car lot provided them to Mr. Brown, who then gave them to the Bank. Nancy Myers, the branch manager for the Bank and the loan officer who submitted Mr. Chipman's loan for approval, testified that she spoke with Mr. Chipman personally about the loan via telephone at least twice in March 2007. During those calls, they discussed "[t]hat [the Bank] could go ahead and do [the loan] using the financials that were given to us and then do it on a 90-day period." When Mr. Chipman came into the Bank to sign the application, she went over the process with him again.

---

[3] At trial, Mr. Chipman questioned that Mr. Brown was his agent. Mr. Chipman stated that "[h]e was more of a salesman." At his earlier deposition, Mr. Chipman acknowledged that Mr. Brown was his loan broker and stated, "I guess you would call him an agent, yes."

Mr. Chipman also attacks the Bank's reasonable reliance on the documents because the financial statements he provided were dated approximately eighteen months before the time he first applied for the loan in March 2007.[4] Myra Bryant, the special assets manager for the Bank, testified about the process for reviewing a customer's file in order to make a credit decision. She stated that, while it was not standard policy at the Bank to accept a financial statement that was two years old,[5] she had "seen in file reviews some files that contained older statements." Ms. Myers also discussed the Bank's policy for the underwriting department to send back the personal financial statement if it was not acceptable. In this case, underwriting did not let Ms. Myers know that it needed a more updated statement.

Mr. Chipman also criticizes the Bank for accepting a personal financial statement and not independently verifying his income. Ms. Myers testified that, at the time of the loan, the underwriting department required verification of income in the form of a "personal financial statement and/or taxes." At the time of the loan, "[the Bank] would accept any outside personal financial statement."[6] We also note that Mr. Chipman testified at trial that the Bank "had [his] tax returns."

Finally, Mr. Chipman points to his own failure to read the documents before signing them as proof that the Bank's reliance was not reasonable. Mr. Chipman testified at trial that he did not read the loan application that he signed and asserts that Ms. Myers did not ask him whether the information was accurate. The following language appears directly above Mr. Chipman's signature on the one-page loan application: "I/we certify that I/we made no misrepresentations in this loan application or in any related documents, that all information is true and complete, and that I/we did not omit any important information." The following language appears directly above Mr. Chipman's signature on the one-page personal financial statement: "The undersigned . . . warrants that all information contained in this application is true and accurate." Mr. Chipman was a CPA for nearly thirty years and owned his own business. He acknowledged at trial that he was in the habit of signing documents daily and that it was not good business practice to sign documents without reading them carefully. Mr. Chipman testified that he understood why banks ask for and rely on financial statements in making loans and that he expected banks to rely on those financial statements in making

---

[4] The financial statement submitted by Mr. Chipman in connection with the first loan in March 2007 is signed and dated by Mr. Chipman on September 17, 2005.

[5] We note that the financial statement Mr. Chipman provided was less than two years old.

[6] Ms. Myers testified that the Bank's guidelines have since changed.

loans. The parties stipulated that "Mr. Chipman signed the financial statement and provided it to The Bank of Nashville in order to obtain the loan."

We conclude that the Bank reasonably relied on the representations made by Mr. Chipman. Additionally, we find that the evidence preponderates in favor of a finding of fraud against Mr. Chipman for the original loan. Mr. Chipman made an intentional misrepresentation of material facts, with knowledge of their falsity, which resulted in injury to the Bank. We reverse the trial court's finding that Mr. Chipman did not commit fraud against the Bank with respect to the original loan.

## Unjust Enrichment

"The elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)). "The plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract." *Id.*

The trial court noted that, generally, "a party cannot recover on an unjust enrichment claim if there is an enforceable contract between the parties covering the same subject matter." Because the Bank was already awarded judgment on its breach of contract claim against Mr. Chipman, it denied the Bank's claim for unjust enrichment against Mr. Chipman. However, Ms. Chipman, who did not sign the promissory note, received the benefit of the $300,000 in loan proceeds. The court therefore concluded that Ms. Chipman is jointly and severally liable with Mr. Chipman for the $300,000.

On appeal, Ms. Chipman argues that she cannot be held liable for unjust enrichment because (1) she did not receive a benefit from the loans, and (2) the Bank has a valid, enforceable contract with Mr. Chipman.

Ms. Chipman first argues that she did not receive a benefit from the loans because the loan proceeds were put into Mr. Chipman's IRA. Ms. Chipman then argues that the loan was essentially a business loan made to fund Mr. Chipman's car dealership, not to fund his IRA. The note, executed March 30, 2007, explicitly states that the primary purpose of the loan is to "put funds back into 401K." Additionally, both Mr. Chipman and Ms. Chipman testified that the loan proceeds went first into Ms. Chipman's bank account and then into the IRA. At trial, Ms. Chipman testified that she was using the proceeds of the IRA to pay the

mortgage, bills, and living expenses. Mr. Chipman also testified that he and his wife were using the loan proceeds to live on. Ms. Chipman also insists that the Bank "did not prove that any household expense payments made from the IRA are traceable to the $300,000 loan" because Mr. Chipman's IRA was worth more than $800,000 before the $300,000 withdrawal was returned in March 2007 and that amount was more than adequate to fund any household expenses. However, Ms. Chipman acknowledges that the Bank proved "that some funds from the IRA have been used for the Chipmans' household expenses." "[A] plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust." *Freeman Indus., LLC*, 172 S.W.3d at 525.

Ms. Chipman next argues that the Bank cannot recover for unjust enrichment because it has a valid, enforceable contract with Mr. Chipman and has obtained a judgment against him for breach of that contract. "The plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract." *Id.* However, "a plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity if the pursuit of the remedies would be futile." *Id.* at 526. Ms. Chipman insists that the Bank has not submitted evidence that efforts to collect its breach of contract judgment against Mr. Chipman would be futile. The Bank, on the other hand, insists that Mr. Chipman is judgment proof because he transferred assets to his wife and has no assets upon which the Bank can levy.[7]

The preponderance of the evidence supports the trial court's finding that Ms. Chipman has been unjustly enriched. Mr. Chipman testified at trial that the only asset he has is his IRA. Other of his assets upon which the Bank might have collected were transferred to his wife before Mr. Chipman defaulted on the renewal loan. As the trial court stated, "Ms. Chipman received, and continues to receive, the benefit of the $300,000 in loan proceeds which were paid into Mr. Chipman's IRA." Retention of that benefit under these circumstances would be inequitable.

### Civil Conspiracy to Defraud

"The elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid*, 221 S.W.3d at 38.

---

[7] As addressed in our discussion of constructive trusts, *infra*, Tenn. Code Ann. § 26-2-105(b) exempts any funds payable to a participant in a retirement plan from "any and all claims of creditors of the participant," except the state of Tennessee.

The trial court found that "it is essentially undisputed that Ms. Chipman was not aware that Mr. Chipman was seeking a loan or that Mr. Chipman needed to replenish his IRA." As a result, the court concluded that there could be no civil conspiracy related to Mr. Chipman's conduct in receiving the loan. Additionally, the trial court found that the Bank failed to prove with sufficient specificity that "the Chipmans had a common design or that Ms. Chipman was involved in the loan extension to the degree that she could be held to be a participant in a conspiracy to defraud the Bank."

On appeal, the Bank claims that Ms. Chipman knew about the loan, contrary to the trial court's finding that she did not. Testimony from Ms. Chipman at trial seems to indicate that she was aware that Mr. Chipman was seeking a loan to replenish his IRA.[8] However, this fact alone is insufficient to establish a common design between the Chipmans to defraud the Bank.

The Bank claims that there were two overt, wrongful acts by the Chipmans in furtherance of their conspiracy, effectuating their common design to defraud the Bank—Mr. Chipman's issuance of two false financial statements and the fraudulent conveyance of his assets to Ms. Chipman. The Bank states that "whether Ms. Chipman knew the exact details of these wrongful acts is immaterial." *See Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn. 2001). However, in this instance, the Bank's only evidence of a civil conspiracy to defraud

---

[8] Ms. Chipman testified as follows:

Q:  Now, testimony has also been brought out today about the $300,000 taken out of the IRA account.  You knew about the first one, didn't you?

A:  Yes.

. . . .

Q:  . . . [Y]ou knew when The Bank of Nashville first gave the loan to your husband?

A:  I didn't know when he first got it, no.  I didn't know at the very front.  No.  I found out because—well, yeah, probably, because the thing that started this was the $300,000 drawn out of our IRA in January.  I was very upset.  We talked about it.  He said that the business was going to make a loan and the business was going to pay back the loan back into our IRA.

Q:  So you knew that your husband was getting a loan from somewhere to pay that $300,000 back?

A:  Yes.

is testimony from the Chipmans that Ms. Chipman was upset about the $300,000 withdrawal from Mr. Chipman's IRA and wanted him to replenish it.

There is no evidence that Ms. Chipman knew about a false representation or took any action to facilitate a false representation. The Bank points to Ms. Chipman's testimony that she knew that Mr. Chipman was borrowing money and that the loan proceeds went through her checking account back into the IRA. Neither of these facts goes to the establishment of a conspiracy between the Chipmans to defraud the Bank. Ms. Chipman testified that because Mr. Chipman did not maintain his own independent checking account, it was routine for any checks that he drew to go into her checking account. With respect to the fraudulent conveyances, the evidence presented at trial established that Mr. Chipman did not consult Ms. Chipman about the transfers before he made them. Ms. Chipman testified that her husband told her about the transfer of the boat and two houses to her name but only after he brought the paperwork home from the lawyer's office. When asked to describe the circumstances surrounding his transfer of the assets to his wife, Mr. Chipman testified as follows:

> Well, she was very dissatisfied the way things were going. Everything we've ever had, we've had jointly. And I had taken our joint money and put a million dollars in this car business, which half was hers. And so I thought, without consulting her, I thought that, well, if what I've got left some interest in, I'll give to her. It may equalize it. It did not. But in my mind, and her mind, she felt better.

The Bank failed to establish a common design between the Chipmans to defraud the Bank. We affirm the trial court's finding with respect to civil conspiracy.

### Constructive Trust

A constructive trust is an equitable remedy "implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises." *Story v. Lanier*, 166 S.W.3d 167, 184 (Tenn. Ct. App. 2004) (quoting *In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993)). Our Supreme Court set forth the standard applicable to whether a constructive trust should be imposed in a particular case:

> This Court has previously recognized that a constructive trust may be imposed where, for example, a person (1) obtains legal title to property in violation of some duty owed the owner of the property; (2) obtains title to property by fraud, duress, or other inequitable means; (3) makes use of a confidential

relationship or undue influence to obtain title to property upon more advantageous terms than would otherwise have been obtained; or (4) obtains property with notice that someone else is entitled to the property's benefits.

*Stewart v. Sewell*, 215 S.W.3d 815, 826 (Tenn. 2007).

The Bank sought a determination that the $300,000 in loan proceeds were subject to a constructive trust, such that neither Mr. Chipman or Ms. Chipman ever held title to the funds but rather held them in trust for the Bank. The trial court, relying on Tenn. Code Ann. § 26-2-105, declined to impose a constructive trust. Tenn. Code Ann. § 26-2-105(b) exempts any funds payable to a participant in a retirement plan from "any and all claims of creditors of the participant," except the state of Tennessee. The trial court noted that it is undisputed that Mr. Chipman's IRA is a qualified retirement plan subject to this statutory exemption.

The standard of proof to establish a constructive trust is by clear and convincing evidence. *In re Conservatorship of Brown*, No. W2004-02825-COA-R3-CV, 2005 WL 1848482, at *3 (Tenn. Ct. App. Aug. 5, 2005). This standard "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." *Id.* at *4 (quoting *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995)). We review the trial court's conclusions relating to constructive trusts de novo with no presumption of correctness. *Story v. Lanier*, 166 S.W.3d at 184.

The Bank argues that the trial court erred in concluding that a constructive trust cannot reach funds once these funds have been placed in an IRA. The Bank insists that constructive trusts can extend into exempt assets and that wrongful conduct can bar a party from asserting an exemption to stop execution or collection of a judgment. The Bank cites case law that allegedly demonstrates that courts have previously overridden exemption statutes when imposing constructive trusts or correcting the wrongs caused by fraud. The cases cited by the Bank, primarily from other jurisdictions, are not on point or are factually distinguishable. None concern the imposition of a constructive trust on funds payable to a participant in a retirement plan in the face of Tenn. Code Ann. § 26-2-105(b). We know of no authority which overrides the fraud exemption cited in Tenn. Code Ann. § 26-2-105(b) under the facts of this case. We affirm the trial court's decision not to impose a constructive trust.

### Attorney Fees and Costs

The Bank requests attorney fees and costs on appeal. The Bank makes its request "in accordance with Tenn. R. App. P. 27(a)(8) and *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 410-11 (Tenn. 2006)." *Killingsworth* involved a successful action brought by a plaintiff under the Tennessee Consumer Protection Act, which expressly provides for the

recovery of "reasonable attorney's fees and costs." Tenn. Code Ann. § 47-18-109(e)(1). Moreover, "[i]n order for a court to award attorney's fees, there must be either a contractual agreement or a statutory right. Otherwise, each party to a lawsuit ordinarily bears the expense of his own attorney's fees." *Stroud v. Stroud*, No. 01A01-9501-PB-00008, 1995 WL 498946, at *2 (Tenn. Ct. App. Aug. 23, 1995). We decline to award the Bank any additional attorney fees and costs incurred in this appeal.

CONCLUSION

We affirm the trial court's decision with respect to the Bank's claims against Ms. Chipman for unjust enrichment and civil conspiracy to defraud, as well as its decision not to impose a constructive trust. We reverse the trial court's decision that Mr. Chipman did not commit fraud in originally obtaining the loan. Costs of appeal are assessed against Mr. Chipman and Ms. Chipman, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE